## BROOKS *v.* KUNKLE ET AL.

[No. 3,161.   Filed May 15, 1900.]

CONTRACTS.—*Gas and Oil Lease.—Landlord and Tenant.*—An action for the recovery of rents on an oil and gas lease cannot be maintained where the lease provided that in case no well should be completed within ninety days from the date of the instrument the grant should become null and void, unless the party of the second part should pay the party of the first part one dollar per acre for each year the completion of the well should be delayed thereafter, where more than a year had elapsed and the party of the second part had failed to avail himself of the right to drill a well, and no rent had been paid.

From the Wells Circuit Court. *Affirmed.*

*I. W. Christian, W. S. Christian, F. E. Gavin, T. P. Davis, J. L. Gavin* and *Mock & Sons,* for appellant.

*J. S. Dailey, A. Simmons* and *F. C. Dailey,* for appellees.

BLACK, J.—A demurrer for want of sufficient facts to the complaint of the appellant against the appellees was sustained.  The complaint was based upon a written instrument alleged to have been executed by the appellant on the 13th of May, 1897, to the appellee Kunkle, and by him assigned in writing on the 3rd of July, 1897, to the other defendant, the Ohio & Indiana Oil Company, which caused it to be recorded in the office of the recorder of Hancock county on the 19th of March, 1898; the instrument and assignment being set out in the complaint.  The written instrument was as follows: "In consideration of the sum of $1, the receipt of which is hereby acknowledged, Madison Brooks, of Hamilton county, in the State of Indiana, first party, hereby grant unto W. A. Kunkle, of second part, his heirs and assigns, all the oil and gas and other minerals and mineral water in and under the following described real estate, together with the right to enter thereon at all times for the purpose of drilling for oil and gas and all other minerals and mineral water, and to erect and maintain all buildings and structures and lay all pipes necessary for the production and transportation of oil, gas, minerals, and mineral water taken from said premises, excepting and reserving, however, to first party, the one-sixth part of all oil or other minerals produced and saved from said premises, to be delivered in tanks at wells or in pipe lines with which said second party may connect his well or wells; said real estate being described as follows [describing a tract of 160 acres in Hancock county], to have and to hold the said interest in and to the above premises on the following conditions:  If gas only is found, second party

agrees to pay $100 per year for the product of each well while the same is being marketed off the premises, and first party may use gas free of cost to heat and light dwelling-house during said time, whenever said first party shall request it. Said second party shall bury all oil and gas lines being laid through tillable lands below plow depth, and pay all damages to growing crops by reason of the burying and removing said lines. No well shall be drilled nearer than 300 feet of the house or barn on said premises, and no well shall occupy more than one acre. In case no well is completed within ninety days from this date, then this grant shall become null and void between the parties hereto, unless the second party shall pay to said first party $1 per acre for each year thereafter the completion of such well is delayed, said rental to begin at date of lease. The second party shall have the right to use gas, oil, or water to run all necessary machinery for operating for any purpose on said real estate, and shall also have the right to remove all its property from said premises at any time. It is understood that second party shall have the privilege to surrender this lease at any time by first paying the rental on said land to date of such surrender. It is understood between the parties to this grant that all conditions between the parties hereto shall extend to their heirs, executors, and assigns. In witness whereof the parties to this grant have hereunto set their hands and seals," etc. The instrument was signed and sealed, and acknowledged before a notary public by said Madison Brooks only.

It was further alleged "that ever since the execution of said lease said defendants have had possession of said real estate for all the purposes therein stipulated, and have failed and refused to drill for oil, gas, minerals, and mineral water, as stipulated in said lease, and have failed and refused to pay the rental therefor, and have failed and refused to perform their part of said agreement; and plaintiff says that there is due and owing him for rental on said lease the sum of," etc.; "wherefore," etc.

Where a person, against whose capacity to make a contract nothing appears, has thus executed and acknowledged such a formal instrument to one who has assigned it to another, who has caused it to be recorded in the office of the county recorder, and it is brought into litigation by the party who executed it, asserting rights and obligations thereunder, it will not be presumed that it was therein intended by the parties, or either of them, to do a useless or absurd thing; yet where there is no averment of fraud or mistake, the intention of the parties must be sought in the terms of the instrument. A capable party might execute such a contract lawfully, and with reasonable expectation of deriving benefit upon the occurrence of events contemplated by its provisions, but not from mere lapse of time. No absolute obligation to drill a well or do any act whatever was cast upon the party of the second part by the terms of the instrument, which, by its language, is characterized both as a grant and as a lease, and which is referred to in the complaint as a lease. It was, by its terms, to be entirely optional with the party of the second part whether or not anything should ever be done by him by way of use of the land; and, as no well was made, there arose no obligation to pay for oil or gas. It was provided that, in case no well should be completed within ninety days from the date of the instrument, the grant should become null and void, unless the party of the second part should pay the party of the first part $1 per acre for each year the completion of a well should be delayed thereafter, said rental to begin at date of lease; and the party of the second part was to have the unconditional right to remove all "its" property from the premises at any time, and to have the privilege of surrendering the lease at any time by first paying the rental on the land to the date of surrender. It does not appear that any of the property of the second party was ever placed on the land or removed therefrom, or whether or not there was any affirmative surrender or proposal therefor; but

more than a year had elapsed, and the party of the second part had failed to avail himself of the right to drill a well, and no rent had been paid. There was no absolute requirement that the party of the second part should pay any rent, but the grant was to be void unless rent were paid. The instrument is susceptible of being construed as an expression of a rational and lawful agreement. We must construe it as expressed, attributing to the language its ordinary meaning; and we can not construct a different contract by injecting additional words not implied in the terms employed by the parties, or by substituting meanings merely conjectured by us to be more reasonable than those expressed. Judgment affirmed.