UNITED STATES v. COMET OIL & GAS CO. et al.

(Circuit Court, E. D. Oklahoma. January 30, 1911.)

No. 1,471.

1. COURTS (§ 414*)—JURISDICTION OF FEDERAL COURTS—SUITS BY UNITED STATES.

A Circuit Court has jurisdiction of any civil action which the United States is authorized to maintain.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 414.*]

2. INDIANS (§ 16*)—ACTION ON BOND GIVEN BY LESSEE OF INDIAN LANDS.

Under Act April 26, 1906, c. 1876, §§ 19, 20, 34 Stat. 144, which provides that full-blood Indians of either of the Five Civilized Tribes may lease any lands other than homesteads for more than one year, but that such leases must be in writing and subject to the approval of the Secretary of the Interior, and can be made only under such rules and regulations as he may prescribe, it is competent for him to require by such rules and regulations that all payments under the lease shall be made to an Indian agent, and that the lessee shall give a bond to the United States to secure the performance of the lease, and in such case the United States may maintain an action against the lessee and his surety on the bond for breach of such conditions.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 16.*]

3. PRINCIPAL AND SURETY (§ 152*)—JOINDER OF DEFENDANTS—ACTION ON BOND.

Under Snyder's Comp. Laws Okl. 1909, §§ 5568, 5571, the principal and surety on a joint and several bond may properly be joined as defendants in an action on the bond.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 416–419; Dec. Dig. § 152.*]

4. INDIANS (§ 16*)—LEASE OF LANDS—BREACH OF CONDITIONS—ACTION ON BOND.

Where an oil and gas lease of Indian lands, made as required by statute under rules and regulations prescribed by the Secretary of the Interior, required the lessee to pay a stated sum per acre each year as advance royalty to an Indian agent for the lessor, and was secured by a bond running to the United States, a failure to pay such royalty is a breach of the contract for which the United States may maintain an action on the bond.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 16.*]

5. MINES AND MINERALS (§ 78*)—CONSTRUCTION OF OIL AND GAS LEASES—FAILURE TO DRILL—LIABILITY FOR RENT—"PRIVILEGE."

A lease of land for oil and gas purposes which, after prescribing the royalty to be paid by the lessee on the oil and gas produced, and the payment of a stated sum per acre annually as advance royalties, provides that the lessee shall exercise diligence in developing the property and shall drill at least one well within 12 months, and that, should he fail to do so, the lease may be declared null and void by the lessor after 10 days' notice, "provided that the lessee shall have the privilege of delaying operations for a period not exceeding five years * * * by paying * * * in addition to the required annual advanced royalty, the sum of one dollar per acre per annum," imposes no obligation upon the lessee to pay for such extension, but merely gives him an option to do so, and his failure to either drill the well or make the payment does not give the lessor a right of action to recover such payment.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 78.*

For other definitions, see Words and Phrases, vol. 6, pp. 5583–5589; vol. 8, p. 7764.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. Parties (§ 90\*)—"Defect of Parties."**
    A misjoinder of parties defendant is not a "defect of parties" (citing Words and Phrases, vol. 2, p. 1933).
    [Ed. Note.—For other cases, see Parties, Dec. Dig. § 90.\*]

At Law. Action by the United States against the Comet Oil & Gas Company and the Federal Union Surety Company. On demurrer to petition. Sustained in part and overruled in part.

J. C. Denton, Asst. U. S. Atty.
James H. Huckleberry, for Comet Oil & Gas Co.
Butte & Boone, for Federal Union Surety Co.

CAMPBELL, District Judge. The United States brings this action against the Comet Oil & Gas Company and the Federal Union Surety Company, principal and surety, respectively, on a bond for the faithful performance on the part of the oil company of the terms of a certain oil lease entered into between George Wolf, a full-blood Creek Indian as lessor, and the said oil company as lessee, on April 18, 1907, with the approval of the Secretary of the Interior.
Section 19 of the Act of April 26, 1906 (chapter 1876, 34 Stat. 144), which restricts the alienation of the lands of full-blood Indians of the Five Civilized Tribes for the period of 25 years, contains this provision:

"Provided, however, that such full-blood Indians of any of said tribes may lease any lands other than homesteads for more than one year under such rules and regulations as may be prescribed by the Secretary of the Interior."

Section 20 of the same act provides that such leases shall be in writing, and subject to the approval of the Secretary of the Interior, and shall be absolutely void and of no effect without such approval. Among the rules and regulations prescribed by the Secretary of the Interior, relative to such leases, are the following:

"An oil and gas lessee shall drill at least one well on each leasehold within twelve months from the date of the approval of bond, or may further delay operations by paying within twenty-five days after the end of the year $1 per acre per annum for each leasehold. Operations may be so delayed upon making the annual payments required for a period not exceeding five years from May 22, 1906, except where bonds are approved subsequent to that date, in which event the period of delay shall run from the date of the approval of the bond. A failure to drill within one year or to make the payment required within twenty-five days after the end of the year shall subject the lease to forfeiture without further notice to the lessee."

"The Secretary of the Interior may at any time require any lessee immediately to develop a leased tract or offset wells on adjacent tracts should he determine that the interests of the lessor demand such action."

"Lessees must drill at least one well upon land covered by each lease within twelve months from the date of the approval of the bond; failure to so drill subjects the lease to cancellation, except the time for drilling may be extended upon the payment of an annual rental. (See section 23.) Should the interests of the lessor so demand, the Department reserves the right to require any lessee to develop a leased tract immediately."

The lease between Wolf and the oil company was executed upon a form prescribed and prepared by the Department of the Interior, and

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

recites that it is entered into between said Wolf and the oil company under and in pursuance of sections 19 and 20 of the said act of April 26, 1906, and the regulations prescribed by the Secretary of the Interior thereunder; that the lessor, Wolf, for and in consideration of the royalties, covenants, stipulations, and conditions therein contained and agreed to be paid, observed, and performed by the oil company, does demise, grant, and let unto the oil company, for the term of 15 years from its date, all the oil deposits and natural gas in or under the property described, with the right to prospect for oil, and use so much of the surface as may be necessary therefor. Then follows a paragraph providing that the oil company shall pay or cause to be paid to the United States Indian Agent, at Union Agency, Ind. T., for the lessor, as royalty, the sum of 10 per cent. of the gross proceeds of the oil produced, and $150 per annum on each gas-producing well. Then follows this paragraph:

"And the party of the second part further agrees and binds itself, its heirs, successors, and assigns, to pay, or cause to be paid to the said agent, for lessor, as advanced annual royalty on this lease, the sums of money as follows, to wit: Fifteen cents per acre per annum, in advance, for the first and second years; thirty cents per acre per annum, in advance, for the third and fourth years, and seventy-five cents per acre per annum, in advance, for the fifth and each succeeding year thereafter of the term for which this lease is to run; it being understood and agreed that said sums of money so paid shall be a credit on the stipulated royalties; and further, that should the party of the second part neglect or refuse to pay such advanced royalty for the period of sixty days after the same becomes due and payable, the Secretary of the Interior, after ten days' notice to the parties, may declare this lease null and void, and all royalties paid in advance shall become the money and property of the lessor. * * *"

After providing for the payment of advance royalties as above, the lease then proceeds:

"The party of the second part further covenants and agrees to exercise diligence in the sinking of wells for oil and natural gas on the lands covered by this lease, and to drill at least one well thereon within twelve months from the date of the approval of the bond by the Secretary of the Interior, and should the party of the second part fail, neglect, or refuse to drill at least one well within the time stated, this lease may, in the discretion of the Secretary, be declared null and void, after ten days' notice to the parties; provided that the lessee shall have the privilege of delaying operations for a period not exceeding five years from the date of the approval of the bond to be furnished in connection herewith, by paying to the United States Indian Agent, Union Agency, Indian Territory, for the use and benefit of the lessor, in addition to the required annual advanced royalty, the sum of one dollar per acre per annum for each leased tract remaining undeveloped, but the lessee may be required to immediately develop the tracts leased, should the Secretary of the Interior determine that the interests of the lessor demand such action."

It is further provided in the lease that:

"It is mutually understood and agreed that this indenture of lease shall in all respects be subject to the rules and regulations heretofore or that may hereafter be lawfully prescribed by the Secretary of the Interior, relative to oil and gas leases in the Creek Nation."

It is further provided that if a lessee makes a reasonable and bona fide effort to find and produce oil in paying quantities, and such effort

is unsuccessful, it may at any time thereafter, with the approval of the Secretary of the Interior, surrender and wholly terminate the lease, upon the payment and performance of all its then accrued and payable obligations thereunder. Then follows this provision with regard to the bond:

"It is further agreed and understood that the approval of this lease shall be of no force or effect unless the party of the second part furnishes, within sixty days from the date of approval of the application filed in connection herewith, a bond to the satisfaction of the Secretary of the Interior; in accordance with the regulations of July 7, 1906, prescribed by him, which shall be deposited and remain on file in the Indian office during the life of this lease."

The bond upon which this suit is based is in the following terms:

"Know all men by these presents, that Comet Oil & Gas Company, of Muskogee, I. T., as principal, and Federal Union Surety Company, of Indianapolis, Indiana, as surety, are held and firmly bound unto the United States of America in the sum of two thousand ($2,000.00) dollars, lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, and each of us, our heirs, successors, executors, or administrators, jointly and severally, firmly by these presents.

"Sealed with our seals and dated this 6th day of July, 1907.

"The condition of this obligation is such that whereas the above-bounden Comet Oil & Gas Company, as principal, entered into a certain indenture of lease, dated April 18, 1907, with George Wolf, of Council Hill, I. T., for the lease of a tract of land described as follows: the S. W. ¼ of Sec. 32. Tp. 13 N., R. 15 E., containing 160 acres more or less, and located in the Creek Nation, Indian Territory, for oil and gas mining purposes for the period of five years from the date thereof and as much longer thereafter as oil or gas is found in paying quantities on said land:

"Now, if the above-bounden, Comet Oil & Gas Company, shall faithfully carry out and observe all the obligations assumed in said indenture of lease by it and shall observe all the laws of the United States, and regulations made, or which shall be made thereunder, for the government of trade and intercourse with Indian tribes, and all the rules and regulations that have been or may be, lawfully prescribed by the Secretary of the Interior, under sections 19 and 20 of the Act app. April 26, 1906, relative to leases executed by allottees of the Five Civilized Tribes, in Oklahoma, then this obligation shall be null and void; otherwise to remain in full force and effect."

The plaintiff, the United States, alleges that the advance royalty of 30 cents per acre for the third year, amounting to $48, is due and unpaid, and that up to the 26th day of August, 1909, the lessee oil company had failed, neglected, and refused to drill a well on the leased lands, by reason of which it became indebted to the lessor in the sum of $320 as annual rentals, being $1 per acre per annum, which the lease provided the lessee might pay in lieu of sinking a well within the time required. Separate demurrers have been interposed by the oil company and the surety company raising the question of the jurisdiction of the court; the capacity of the government to sue; that there is a misjoinder of causes of action; that there is a misjoinder of parties; that the petition does not state facts sufficient to constitute a cause of action. The surety company urges, as a further ground of demurrer, that it appears from the petition and exhibits that no well was drilled under said oil and gas mining lease within 12 months from the date of the approval of the bond, to wit,

August 26, 1907, and therefore, under the terms of said lease and the defendants' bond, it would not be liable for the reason that the lease expired by its own limitation on August 26, 1908.

[1] The United States being a party plaintiff, the court has jurisdiction of the action if it is one which the government may maintain. United States v. Sayward, 160 U. S. 493, 16 Sup. Ct. 371, 40 L. Ed. 508. So we pass to the question of the capacity of the government to maintain the suit.

[2] The Indian lessor is a full-blood Creek Indian. The lease, which is made a part of the petition, recites that it is made pursuant to the provisions of sections 19 and 20 of the act of April 26, 1906, so that, while it is not specifically stated in the petition that the land involved is part of the allotment of the lessor, that will be assumed. We have seen that under the provisions of the act of April 26, 1906, leases such as this must be in writing and subject to the approval of the Secretary of the Interior, and can be made only under such rules and regulations as he may prescribe. We have seen that, under the rules and regulations as prescribed by the Secretary, one of the requirements is the giving of a bond, such as the one sued upon here. Before the Secretary will approve such an oil lease, he requires that such a bond shall be given. It runs, not to the lessor, but to the United States. In the exercise of its guardianship over these full-blood Indians, Congress has seen fit to supervise the leasing of their lands, for more than one year, and, as a safeguard against their improvidence or inability to protect their own interests in the making of such leases, has empowered the Secretary of the Interior to pass upon any such contracts and approve or disapprove the same. In United States v. Thurston County, 143 Fed. 287, 74 C. C. A. 425, Judge Sanborn, speaking for the court, says:

"The act of 1902 [Act May 27, 1902. c. 888, § 7, 32 Stat. 247] authorized these heirs to sell and convey their inherited lands only when the proposed sales were approved by the Secretary of the Interior. It thereby vested in the Secretary plenary power to permit or to forbid the sales proposed. The whole is greater than any of its parts and includes them all, and the authority to allow or to prohibit proposed sales necessarily included the power to consider and determine the terms and conditions on which such sales should be approved. * * * As the Secretary of the Interior was empowered to permit or forbid the sales of these inherited Indian lands, he had authority to determine upon what conditions he would allow such sales and to prescribe and enforce the terms specified in his regulations upon this subject."

In this case, as one of the conditions of the approval of the lease, the Secretary had prescribed in the very terms of the lease itself that all the payments which the lessee was required to make thereunder should be made to the United States Indian Agent, at Union Agency, Ind. T. By consent of the Indian lessor and the lessee, the United States, through its agents in the Interior Department, undertook to make collection of the royalties, rentals, etc., which should from time to time arise under the lease, and account to the Indian therefor. In view of this, the Secretary might very properly provide that the lessee should give to the United States a bond to protect it against

any default on the part of the lessee and insure its receiving for payment eventually to the lessor all sums provided for under the terms of the lease. No reason is conceived why the United States may not maintain this suit on the bond. The objection that there is a misjoinder of causes of action is without merit.

[6] It is urged that there is a misjoinder of parties defendant. As this does not come within the terms "defect of parties," it is doubtful whether the question may be raised on demurrer. Snyder's Comp. Laws Okl. 1909, § 5269; Words & Phrases, vol. 2, page 1933, and cases cited.

[3] An action may be maintained against any one or more of the obligors of a joint and several bond, at the option of the plaintiff. 5 Cyc. 621. The oil company and the surety company are properly joined as defendants. Snyder's Comp. Laws Okl. 1909, §§ 5568, 5571.

It follows that if, by the terms of the lease, the lessee is obligated to pay the advance royalties and the annual payment in lieu of development, or either one or the other of them, the petition states a cause of action, and is good as against a general demurrer.

[4] As to the advance royalty, the language of the lease is too plain to admit of argument. The lessee specifically agrees and binds himself to pay or cause to be paid to the Indian Agent for the lessor, as advance annual royalty on the lease, 15 cents per acre per annum, in advance, for the first and second years; 30 cents per acre per annum, in advance, for the third and fourth years: and 75 cents per acre per annum, in advance, for the fifth and each succeeding year thereafter, during the terms of the lease. This is a distinct obligation assumed by it, one of the obligations contemplated in the bond, and for failure on the part of the lessee to make such payments this suit can be maintained by the United States, the obligee in the bond.

[5] It is further contended by the plaintiff that the provision in the lease that, in case of failure to drill a well within the 12 months, the lessee may have the privilege of paying $1 per acre per annum, and thereby extend the time within which drilling may be done, not to exceed five years, amounts to an obligation on the part of the lessee to make this payment of $1 per acre per annum, if he shall delay the drilling of the well. After the paragraph providing for advance royalty. to be paid during the term of the lease, comes the paragraph relating to this payment of $1 per acre per annum. It is not entirely an innovation as a provision in oil leases. An examination of the reports discloses that provisions similar to this have long been features of oil leases in the oil regions of Pennsylvania, West Virginia, Ohio, and Indiana, and the courts of these states have had occasion to consider them.

The case of Snodgrass v. South Penn Oil Co., 47 W. Va. 509, 35 S. E. 820, decided by the Supreme Court of Appeals of West Virginia. March 24, 1900, was an oil lease wherein it was provided that the royalty to be paid the lessor should be one-eighth of the oil produced and saved from the premises, and $200 per year for each gas well. A further feature of the lease was this provision:

"Provided, however, that this lease shall become null and void and all rights thereunder shall cease and determine, unless a well shall be completed on the premises within one year from the date hereof, or unless the lessee shall pay at the rate of three hundred and fifty dollars, quarterly in advance, for each additional three months such completion is delayed from the time above mentioned for the completion of such well, until a well is completed."

No well having been commenced or completed within the time provided, the lessor brought an action of trespass on the case, in assumpsit, upon the lease, pleading that by the lease the lessee agreed and promised the plaintiff to complete a well on the premises within the time provided, and, in case of failure to do so, to pay a rental of $350 quarterly, in advance, to wit, $350 for each three months, and to continue to do so until a well should be completed; the amount of quarterly payments so claimed being $1,400. The question in the case was whether the provision above quoted amounted to a promise on the part of the lessee to pay $350 per quarter, in lieu of the completion of a well, within the time required. The court said:

"Although the agreement contains the provision above quoted, yet that clause merely provides a means by which a forfeiture of the lease may be avoided. The agreement contains no contract or promise to pay anything whatever for the delay in the completion of a well, and yet the declaration claims that by the terms of the contract there is due from the defendant to the plaintiff on account of the sums to be paid quarterly, in advance, the sum of $1,400. The question in this case is not whether the defendant has forfeited the lease, but whether it is pecuniarily liable to the plaintiff for failure to make certain payments to the plaintiff whereby such forfeiture could have been avoided. Counsel for plaintiff rely on the case of Roberts v. Bettman, 45 W. Va. 143, 30 S. E. 95; but that case was materially different from this. There the leases sued on contained the following clause: 'It is agreed that the party of the second part shall pay to the party of the first part one hundred dollars per month in advance until a well is completed, from the date of this lease, and a failure to complete such well or to pay such rental when due, or within ten days thereafter, shall render this lease null and void,' etc. There was an expressed promise to pay one hundred dollars per month in advance, until a well was completed; but, in the agreement sued on in the case under consideration, there was no such promise or contract. Counsel for plaintiff in error claims that the lease continued unless it has been surrendered by the defendant; but, even if that be true, it would work no benefit to the plaintiff in error, for the reason that there was no contract on the defendant's part to pay anything as rent or compensation for delay in commencing operations."

The court then cites the case of Glasgow v. Gas Co., 152 Pa. 48, 25 Atl. 232, hereinafter referred to, and, proceeding, says:

"The construction placed upon said clause in the agreement and the conclusion reached by the Pennsylvania court, as to the consequence resulting from a failure to pay the hundred dollars monthly in advance, seem to be reasonable and right, and they accord with my views on the proper construction of the agreement declared on in the case at bar. In the absence of a contract or promise on the part of the defendant to pay rent for failure to commence operations, I conclude that under this agreement the only consequence that would result from such failure would be a forfeiture of the lease, and that the court committed no error in sustaining the demurrer to the plaintiff's declaration."

The same court of West Virginia later, in the case of Lowther Oil Co. v. Guffey, 52 W. Va. 88, 43 S. E. 101, decided January 14, 1903, had before it an oil lease which in consideration of the sum of $1 the lessor granted unto the lessee all the oil and gas in and under certain described premises, with the right of ingress and egress, at all times, for the purpose of drilling and operating for oil, gas, or water, and to conduct all operations necessary therefor, reserving to the lessors a royalty of one-eighth part of all oil produced, with this provision:

"In case no well is completed within two years from this date, then this grant shall immediately become null and void as to both parties; provided, that second party may prevent such forfeiture from year to year by paying to the first party annually in advance $18.75, at her residence, until such well is completed."

With reference to the provision just quoted, the court say:

"This latter clause converts what would be otherwise a perpetual grant into a lease from year to year, at the option of the lessee, until oil and gas are produced, and then to continue so long as they are produced in paying quantities."

In the case of Glasgow v. Chartiers Oil Co., 152 Pa. 48, 25 Atl. 232, decided by the Supreme Court of Pennsylvania in 1892, there was involved an instrument which the court found to be a demise of the oil and gas under the grantor's land, and of the right to go upon and operate the land for oil and gas purposes. The lease or right granted was to continue for five years and as much longer as oil or gas should be found in paying quantities on the tract. The consideration for the lease or grant was a bonus of $100, and a royalty of one-eighth part of the oil produced; or $300 per year for each producing gas well. It also contained this provision:

"Provided, however, that this lease shall become null and void and all rights thereunder shall cease and determine unless a well shall be completed on the premises within one month from the date hereof, or unless the lessee shall pay at the rate of one hundred dollars monthly, in advance, for each additional month."

As to the effect of this provision, the court say:

"There is no express covenant, promise, or undertaking by the lessee to be found anywhere in the agreement. A covenant to operate within a reasonable time might be implied from the nature of the instrument; but the lessee has been careful to make no express promise to operate the lease or to do anything towards the development of the land. If he does nothing, the penalty for his inaction is fixed. It is the forfeiture or loss of his rights under the agreement. But, if he thinks it an object to do so, he may prevent the assertion of this forfeiture by paying $100 in advance of the first day of the next month after the date of the contract, and upon such payment the right of forfeiture is postponed one month. This he may do month after month, as long as he pleases, or until the end of five years. If, however, he puts down no well during the first month and pays no money in lieu of it, his rights are at an end, and the lessor may assert the forfeiture. This looks like an improvident agreement, and, as the learned judge of the court below suggests, may have been obtained by artifice; but no fraud is alleged, and the question is therefore one of consideration only. Its legal effect is to

confer on the grantee the right to explore for oil on the tract described. If he does not exercise this right within one month. it is lost to him, unless he chooses to pay $100 in advance, as the price of another month's opportunity to explore. If he does exercise it and finds nothing, he is under no obligation to continue his explorations. If he explores and finds oil or gas, the relation of landlord and tenant or vendor and vendee is established, and the tenant would be under an implied obligation to operate for the common good of both parties, and pay the rent or royalty reserved. In this case he did nothing in the way of development and after the payment of $100 per month for the delay, for a short time, he ceased to pay. The appellant contends that, because he might pay under the terms of the contract, he may be compelled to pay; but payment was the means provided by the contract by which the exercise of the right of the lessor to assert a forfeiture could be postponed. If the lessee did not wish to postpone the exercise of such right, he had only to refrain from making the payment."

The Supreme Court of Ohio, in the case of Van Etten v. Kelley, 66 Ohio, 605, 64 N. E. 560, decided June 24, 1902, in considering a similar question, said:

"The only question worthy of report is as to the true construction of the oil lease in regard to the payment of rentals. All the terms and conditions of the lease in that regard are the following: 'In case no well is completed within 30 days from this date, then this grant shall become null and void, unless second party shall pay to said first party thirty dollars each and every month in advance while such completion is delayed. * * * It is understood that the monthly rental shall apply to any well or wells not completed as herein specified.' It was in said lease specified that a well should be completed every 60 days from date of lease on east 40 acres until six wells should be completed thereon, and that a well should be completed every 90 days on the west 40 after the completion of the sixth well on the east 40. A well was completed on the east 40 within 30 days after the date of the lease, and as to that well there was full performance, and the lease was thereby saved from forfeiture as to the first well. The same is true of the second well. But no third well was ever completed, and thereby the agreement in the lease as to completing such other wells was broken, and now the question arises as to the remedy for such breach of contract. The plaintiff below claims that, in the words 'unless second party shall pay to said first party thirty dollars each and every month in advance while such completion is delayed,' there lies a promise to pay $30 per month for such delay. This is not tenable. The full force and effect of this 'unless' clause, taken by itself, is to give the lessee the option, by making such payment, to continue the lease in force to the end of the term without completing the first well, or, upon the failure to make such payment, allow the lease to become null and void at the end of 30 days after the date of the lease. Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76. There is no promise or obligation in this lease to pay rental to the lessor for failing to complete the first well, but only a privilege to pay such rental, at the option of the lessee, to prevent the lease from becoming null and void. As the only monthly rental provided for in the lease is that found in this 'unless' clause, and as that rental is to prevent the lease from becoming null and void, it seems fairly clear that the subsequent understanding that the monthly rental should apply to any well or wells not completed as therein specified is for the same purpose (that is to prevent the lease from becoming null and void), and that, upon failure to pay such monthly rental in advance while the completion of any well was so delayed, the lease, by its terms, became null and void, and the lessor had the option to so treat the lease, and recover possession, or recover for use and occupation, or recover damages for breach of contract to drill the wells specified in the lease; but she could not recover rentals for breach of contract to complete wells, because there is no agreement to pay rentals for such breach, and, there being no such agreement, there can be no breach thereof. In Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62, the lessee agreed to drill

certain wells, and, upon failure, to pay certain rentals. It was held that the lessor might elect to enforce the contract to drill, or waive that and enforce the promise to pay rental. There the option was with the lessor. Here, as there is no promise to pay rental, the option is with the lessee either to drill or pay rental to keep his lease alive; and, failing in both, the lease becomes null and void, with an option, however, in the lessor to treat it as void, or to sue for damages for breach of the contract to complete the wells as specified in the lease. As the action below was for the recovery of rentals under the lease, and as the lease contains no promise to pay rentals, the plaintiff under a correct construction of the lease, has no cause of action for rentals."

A similar question was before the Appellate Court of Indiana in the case of Brooks v. Kunkle, 24 Ind. App. 624, 57 N. E. 260. The instrument involved in this case was an oil lease, whereby, in consideration of $1, the lessee was granted all the oil and other minerals in and under certain described real estate, together with the right to enter thereon, at all times, for the purpose of drilling for oil and gas and all other minerals, and the right to conduct operations thereon, reserving to the lessee one-sixth of all the oil produced, and $100 per year for each gas well, with the further provision:

"In case no well is completed within ninety days from this date, then this grant shall become null and void between the parties thereof, unless the second party shall pay to said first party one dollar per acre for each year thereafter the completion of said well is delayed, said rental to begin at date of lease. * * * It is understood that second party shall have the privilege to surrender this lease at any time by first paying the rental on said land to date of such surrender."

It was alleged that the lessee had failed to complete a well within the time required, and was still in possession of the leased property, refusing either to develop it or to pay the rental therefor. The plaintiff sued to recover such rentals, being the payment of $1 per acre per year, provided for in the foregoing provision. As to the effect of this provision, the court say:

"No absolute obligation to drill a well or do any act whatever was cast upon the party of the second part by the terms of the instrument, which, by its language, is characterized both as a grant and as a lease, and which is referred to in the complaint as a lease. It was by its terms to be entirely optional with the party of the second part whether or not anything should ever be done by him by way of use of the land, and, as no well was made, there arose no obligation to pay for oil or gas. It was provided that, in case no well should be completed within 90 days from the date of the instrument, the grant should become null and void, unless the party of the second part should pay the party of the first part $1 per acre for each year the completion of a well should be delayed thereafter, said rental to begin at date of lease. And the party of the second part was to have the unconditional right to remove all its property from the premises at any time and to have the privilege of surrendering the lease at any time by paying the rental on the land to the date of surrender. It does not appear that any of the property of the party of the second part was ever placed on the land, or removed therefrom, or whether or not there was any affirmative surrender or proposal therefor. But more than a year had elapsed, and the party of the second part had failed to avail himself of the right to drill a well, and no rent had been paid. There was no absolute requirement that the party of the second part should pay any rent, but the grant was to be void unless rent were paid. The instrument is susceptible of being construed as an expression of a rational and lawful agreement; we must construe it as expressed, attributing

to the language its ordinary meaning, and we cannot construct a different contract by injecting additional words not implied in the terms employed by the parties or by substituting meanings merely conjectured by us to be more reasonable than those expressed."

Counsel for the government contends that the effect of the language used in the provision in the lease at bar is essentially different from that of the language used in the provisions construed in the foregoing decisions. But I cannot perceive any substantial difference, and the conclusions reached in the decisions cited and quoted seem to me to be entirely reasonable and sound.

By the terms of the lease the lessee is given a 15-year term for the production of oil and gas from the premises described. As a consideration therefor, the lessee agrees to pay to the lessor 10 per cent. of the gross proceeds of the oil extracted and $150 per year on each gas-producing well it shall use. As a further consideration, the lessee "agrees and binds itself * * * to pay or cause to be paid to the said agent for the lessor, as advance annual royalties on this lease," 15 cents per acre per annum, in advance, for the first and second years; 30 cents for the third and fourth years; and 75 cents for each succeeding year of the term thereafter; and, for a failure to pay such advance royalty for the period of 60 days after due, the lease is subject to forfeiture at the option of the Secretary. While this is termed "advance royalty," it is simply a fixed annual rental per acre for the land covered by the lease, insuring to the lessor that amount of revenue from the land, regardless of whether oil or gas be discovered or not. This the lessee in express terms agrees to pay. Now, having fixed the amount of royalty which shall be paid upon the production of oil and gas, and having fixed an annual rental per acre which shall be assured to the lessor during the term, the next paragraph very naturally takes up the question of the diligence which shall be exercised by the lessee in the development of the property. He expressly "agrees to exercise diligence in the sinking of wells for oil and natural gas." The measure of his diligence during the first 12 months succeeding the approval of the bond shall be the drilling of at least one well, and, if he fails in this, the lease may, in the discretion of the Secretary, be declared null and void after 10 days' notice. Now we have a demise of the premises by the lessor for oil and gas purposes for the term prescribed and an agreement on the part of the lessee to pay certain royalties on oil and gas produced, and to pay a certain annual rental per acre for the land as "advanced royalties," and the agreement for diligent operation with a forfeiture clause in case of failure to develop. Then follows the provision that the lessee shall have the "privilege" of delaying operations for the term of five years by paying to the agent for the use of the lessor the sum of $1 per acre per annum, unless, notwithstanding such payment, the Secretary shall determine that the interests of the lessor require the immediate development of the property. But does the fact that this "privilege" is extended to him and accepted by him in the execution of the lease amount to an obligation on the part of the lessee to exercise the privilege in case of failure to

drill within the time required? If so, does it not amount rather to an alternative than a privilege—an alternative to either drill the well or for failure to do so to pay the penalty of $1 per acre per annum? In my opinion, the term "privilege" is used here in the sense of "option." The terms "privilege" and "option," in the sense referred to here, are held to mean the same thing. Illges v. Dexter, 77 Ga. 36; Hopwood v. McCausland, 120 Iowa, 218, 94 N. W. 469.

Having failed to drill the well within the time required, the lessee subjects the lease to forfeiture. This he has the privilege or option of avoiding by paying $1 per acre, if he desires to do so. By the regulations prescribed by the Secretary, he has 25 days after the expiration of the year within which to determine whether he will exercise this privilege; after that time it is lost to him. The obligation to pay the advance royalty, above referred to, is clear and distinct. The provision for the payment of $1 per acre to extend the time for drilling would not have been denominated a "privilege," had it been intended that it should amount to an obligation to pay that amount, but would have been stated in the same clear terms used as to the advance royalty. The use of the term "privilege" is not consistent with any such intention; nor do I find anything in the regulations referred to that to my mind manifest any such intention. The demurrer as to this portion of the plaintiff's demand is well taken.

The contention of the defendant the Federal Union Surety Company that the lease expired by its own limitation on August 26, 1908, is without merit.

The demurrers are therefore sustained so far as they relate to the recovery sought by the plaintiff based upon the provision for the payment of $1 per annum in case of failure to drill within the time required, and overruled so far as they relate to what is termed advance royalties. It is so ordered.