STINE et al. v. PRODUCERS' OIL CO. (No. 1340.)

(Court of Civil Appeals of Texas. Amarillo. April 24, 1918.)

1. MINES AND MINERALS ☞78(1)—OIL AND GAS LEASES—CONSTRUCTION.

An oil and gas lease provided that after drilling operations had been begun operations might be suspended for 30 days without forfeiture of the lease, and that after drilling operations were begun no tender of the stipulated payment should be necessary when the operations were being carried on in good faith, that if lessee should sink a well and discover oil in paying quantities the lease was to remain in full force for 10 years from such discovery and as much longer as oil should be produced in paying quantities, and, having made such discovery, the lessee was to be exempt from forfeiture, except after judicial ascertainment that he had failed to perform his duty, and that regardless of any other provisions in the lease drilling, when commenced, should be prosecuted with reasonable diligence. Held, that the lease was subject to forfeiture on account of the suspension of drilling following the completion of a well by the lessee, and that the sinking of one well did not make the lease absolute, so that thereafter the lessee was merely bound to prosecute drilling operations with reasonable diligence.

2. MINES AND MINERALS ☞78(7)—OIL AND GAS LEASE—FORFEITURE.

Where an oil and gas lease was made subject to forfeiture on account of the suspension for 30 days of drilling following the completion of a well, unless a stipulated cash payment was made, but providing that reasonable opportunity for preventing forfeiture should be given after a judicial ascertainment thereof, and the lessee suspended drilling for more than 30 days without tendering the cash payment, judgment of cancellation should have been entered, giving the lessee an opportunity to prevent forfeiture by complying with the lease.

3. MINES AND MINERALS ☞78(1)—OIL AND GAS LEASE—CONSTRUCTION.

Where an oil and gas lease provided that forfeiture might be avoided by the payment of a stipulated sum in cash every six months, an absolute obligation on the part of the lessee to prosecute the drilling or to pay the stipulated amount was not imposed; the only contractual liability imposed by the contract being that following a termination thereof.

4. MINES AND MINERALS ☞78(7)—OIL AND GAS LEASE—BREACH—JUDGMENT.

Where an oil and gas lease provided that forfeiture could be prevented by the payment of a stipulated sum or by resumption of the drilling, the lessor was not entitled, where the lease was breached, to judgment both for cancellation and for the cash payment.

Appeal from District Court, Clay County; Wm. N. Bonner, Judge.

Action by F. Stine and others against the Producers' Oil Company. Judgment for defendant, and plaintiffs appeal. Reversed and reformed.

Taylor, Allen & Taylor and Wantland & Parish, all of Henrietta, for appellants. Kay & Akin, of Wichita Falls, and R. A. John and T. J. Lawhon, both of Houston, for appellee.

BOYCE, J. This suit was brought by appellants to cancel an oil lease, and to recover rentals alleged to be due thereunder. As the decision of the case depends on the construction of the lease contract, we will here copy such of its terms as are important to the consideration of the questions presented —for convenience in reference giving the paragraphs our own numberings:

First: "Know all men by these presents, that F. Stine and J. H. Stine, for themselves and F. Stine and J. H. Stine as administrators of the estate of B. R. Stine, deceased, of the post office of Henrietta, state of Texas, hereinafter called lessor (whether one or more), for and in consideration of the sum of $20,760.00, cash in hand paid, receipt of which is hereby acknowledged, do hereby lease unto the Producers' Oil Company, a corporation of Texas, hereinafter called lessee, the following described land, situated in the county of Clay, state of Texas: [Here follows description of several tracts of land aggregating some 200 or 300 acres]. The above land is leased for the purpose of prospecting for oil and the production of the same therefrom, together with the exclusive right of ingress, etc. * * * And subject to the royalties hereinafter mentioned, there is hereby granted and conveyed to said lessee all the oil in and under said land. The royalties mentioned above shall be on oil, a quantity equal to one-eighth of all produced and saved, etc. * * *"

Second: "If operations for the drilling of an oil well are not begun on said land on or before the 29th day of May, 1916, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the credit of the lessor in the bank of W. B. Worsham & Co., bankers, at Henrietta, Texas (which shall continue as the depository regardless of changes in ownership of the land), the sum of ten thousand, three hundred eighty ($10,380.00) dollars, which payment or tender may be made by the check or draft of the lessee, and, however made, operate to confer on the lessee the privilege of deferring the time limit for six months from said date. Thereafter, in like manner and upon like payments or tenders of said amount, the time limit may be further deferred for additional period of six months successively, provided always that this lease cannot be kept in force by such payments in the absence of drilling operations for a longer period than five years from the date last above set forth. But nothing in this paragraph contained shall obligate the lessee, against its wish or option, to make any such payment, or to drill or otherwise carry on operations hereunder. And it is understood and expressly agreed that the first consideration first recited in this lease, the down cash payment, and the obligation of the grantee contained in the next ensuing paragraph thereof, shall be held to sup-

port and sustain not only the privileges granted to the date first written in this paragraph, namely, the date when this lease is to terminate, unless an additional payment or tender is made, but also the lessee's option of extending that period from time to time and keeping this lease in force as aforesaid, as well as any and all other rights and privileges conferred on the lessee by this instrument. * * * "

Third. "After operations for the drilling of an oil well shall have begun on said leased land, it shall not be necessary for the lessee to make any further payments in lieu of drilling operations, as provided in the second preceding paragraph hereof, in order to keep this lease in force; and, during said period of five years, drilling operations may be suspended from time to time, without terminating this lease, provided that the lessee shall have paid or tendered, or shall then pay or tender, the amount hereinbefore mentioned for the then current period of six months, including the time of such suspension, and provided, further, that after such operations are so begun, no such payment or tender shall be necessary when the operations are being carried on in good faith and the period of suspension is less than thirty days."

Fourth: "If the lessee shall sink a well or shaft and discover oil in paying quantities, in or under the above-described land, then this lease shall remain in full force and effect for ten years from such discovery, and as much longer as oil shall be produced therefrom in paying quantities; and having so discovered oil in paying quantities, the lessee shall be exempt from loss or forfeiture of this lease in whole or in part, except after judicial ascertainment that the lessee has failed to perform its duty and discharge its obligations hereunder and a reasonable opportunity thereafter to prevent such loss or forfeiture, and in event of final loss or forfeiture there shall be reserved to the lessee each producing well with ten (10) acres of land surrounding the same, to be designated by the lessee."

Fifth: "Regardless of any other provisions in this contract, drilling when commenced shall be prosecuted with reasonable diligence, and if drilling operations after the expiration of said five years shall be suspended for a period of sixty (60) days, then this lease shall terminate; and in such event there shall be reserved to the lessee each producing well, with ten (10) acres of land surrounding the same, to be designated by the lessee, but this does not effect any of the foregoing terms, which are to precede said five-year period."

Prior to May 29, 1916, the oil company began drilling operations and completed and brought in on August 7, 1906, a well producing oil in paying quantities. No further drilling operations on said lands were begun prior to the filing of this suit on January 30, 1917.

The appellants filed this suit for cancellation of said lease contract, claiming that it had been forfeited except as to ten acres around the producing well on account of the suspension of drilling operations for a longer period than 30 days from the completion of the first well, and by an amendment sought also to recover the sum of $10,380 by reason of appellees holding said lands for a period of 6 months following the completion of said well without drilling, but claiming under said lease. The appellees defended on the ground that the provision for termination of the contract on 30 days' suspension without payment of $10,380 for the 6-month period

in which such suspension occurs in lieu thereof has no application after the bringing in of a producing well, and that the lease then becomes absolute and the oil company is bound to proceed with drilling operations only with reasonable diligence under the terms of section 5 of the contract as above quoted. The oil company further pleaded that it had exercised due diligence in such matter, and on January 30, 1917, had made a location for a new well for drilling; that it had in good faith fulfilled its obligation under said contract, as it construed the same and prayed that if it should be judicially ascertained that it had breached the terms of said contract it should be allowed a reasonable opportunity to "prevent such loss or forfeiture," as provided by the terms of the fourth paragraph of said contract.

The court below held as a matter of law:

"That it was the duty of the defendant company to commence the drilling of a second well on the land described in the foregoing contract within 30 days from the completion of the first well, or to pay to the defendants the sum of $10,380 for the right to extend the time of commencing the said second well for a period of 6 months."

But it further concluded:

"That the defendant company is entitled to a reasonable time after this matter has been judicially ascertained in which to commence the drilling of a second well or pay the sum of $10,380 for a 6-month extension of time."

And having found that 30 days after the overruling of the motion for a new trial was a reasonable time in which to allow the defendant to commence the drilling of a second well or pay the sum of $10,380 for a 6-month extension of time in which to commence said well, it entered judgment forfeiting the lease, but providing that such forfeiture might be obviated by beginning the drilling of said well within said 30 days or the payment of the sum of $10,380 within said time, in which event the lease contract was to remain in effect for 6 months thereafter.

Stated generally, the errors assigned by appellant to this judgment are that the said judgment is erroneous: First, because it does not cancel said lease contract unconditionally; second, because it does not award appellant's judgment against the oil company unconditionally for the sum of $10,380; and, third, because it grants the oil company the option of preventing forfeiture, either by beginning drilling operations within 30 days after motion for new trial should be overruled, or by payment of said sum of $10,380 within said time. We may dispose of the assignments by a general construction of the contract and determination of the rights of the parties thereunder.

The contract does not fix any definite date for its termination. It is absolute until May 29, 1916. Its continued existence thereafter, laying aside for the present the consideration of the provisions of section 4 thereof, is conditioned either on drilling operations by the lessee, or the payment of stipulated

amounts in lieu thereof. Even these payments might not extend the contract beyond the period of 5 years in the absence of drilling operations (paragraph 2), or be made in lieu of drilling operations after 5 years (section 5). It was expressly provided that drilling operations "when commenced shall be prosecuted with reasonable diligence (section 5), and the contract specifically provides for the result of the suspension of drilling operations, either during the first 5-year period or thereafter, for it is stipulated that "during said period of five years drilling operations may be suspended from time to time without terminating this lease, provided that the lessee shall have paid or tendered or shall then pay or tender the amount hereinbefore mentioned ($10,380) for the then current period of six months, including the time of such suspension; provided, further, that after such operations are so begun, no such payment or tender shall be necessary when the operations are being carried on in good faith and the period of suspension is less than thirty days" (paragraph 3), and, "if drilling operations, after the expiration of said five years, shall be suspended for a period of sixty days, then this lease shall terminate" (paragraph 5). These provisions are plain, and that quoted from the third paragraph of the contract clearly applies to the situation presented, unless limited by the fourth paragraph of the contract. Considered alone, the first clause of said fourth paragraph might indicate that the lease, upon discovery of oil, became absolute as to the entire land for the term of 10 years, and so long thereafter as oil should be produced in paying quantities, and free from conditions as to further drilling operations. But subsequent clauses of this same fourth paragraph show that it was contemplated that there might be contingencies upon which the lessee would lose its rights in all the land except ten acres around the producing wells developed by it. Clause 5, stipulating for continuous drilling, provides that it shall apply, "regardless of any other provisions," and then in detail provides for forfeiture for failure of drilling operations after expiration of the 5-year period. These provisions are specific indications of the evident purpose of the entire contract to force the continued development of the oil possibilities of said land by continued drilling or payment of large sums of money in lieu thereof in order to prevent termination of the contract. There is no more inconsistency between the provisions of the third and fourth paragraphs of the contract than between those of the fourth and fifth, and we think the provisions of the third paragraph of the contract are to be construed in connection with the fourth paragraph for the purpose of determining the rights of the parties under the circumstances there stated. The third and fourth paragraphs of the contract, taken together, provide for the termination of the contract, even though oil is discovered,

by suspension of drilling operations occurring during the first five years of the contract, and the provisions of the fourth and fifth paragraphs of the contract provide for the termination of the contract and settlement of the rights of the parties in case of suspension of drilling operations after the expiration of the first 5 years.

[1] We conclude, therefore, that the contract was subject to forfeiture on account of the suspension of drilling following the completion of the well by appellee. This forfeiture could have been prevented by the lessee by the payment of the sum of $10,380 in lieu of drilling operations for each 6-month period following the suspension until resumption of operations. The oil company did not offer to pay any sum of money to prevent the forfeiture, but asked that it be given a reasonable opportunity of preventing forfeiture after a judicial ascertainment thereof in accordance with the term of the fourth paragraph of the contract. We think it is entitled to this right, and the forfeiture may now be prevented by doing those things which it should have done in the first instance. The trial was had in May, 1917, and the court found that the defendant company up to that time, had not commenced drilling another well on said land, and had paid no money to the appellants in lieu thereof.

[2] Under these circumstances the court should have entered judgment canceling the lease, unless the defendant should do that which it was bound by contract to have done to prevent such result, to wit, pay the sum of $10,380 in lieu of drilling operations for the 6-month period ending February 7, 1917, and the further sum of $10,380 in lieu of drilling operations for the 6-month period following February 7, 1917, with interest at the rate of 6 per cent. per annum on these respective amounts from September 7, 1916, and February 7, 1917; and we will reverse the judgment of the trial court and here render judgment to that effect, allowing the oil company 30 days after the judgment of this court becomes final within which to make such payment and reserving from the forfeiture the ten acres of land around the producing well as described in the judgment of the court below. This judgment will not in any manner affect the rights of the parties in reference to any failure of drilling operations on said land after August 7, 1917.

[3] Appellants, however, insist that they are entitled to judgment both for the cancellation of the lease and for $10,380. The suit was instituted on January 30, 1917, which was within a period of 6 months from the completion of the first well, and plaintiff in the original petition merely sought a forfeiture of the lease on account of the suspension of drilling operations for more than 30 days and failure to pay the $10,380 provided for by the contract in lieu thereof. After the expiration of said six-month period,

appellants by an amendment, still sought the forfeiture of the lease contract on account of said suspension of drilling, but alleging that "defendant company exercised its option to hold said lease on said land for the period of six months, beginning September 1, 1916, and did hold said lease during said period of six months without the commencement of any drilling operations upon said land during said time, and thereby became indebted and liable to pay the plaintiff the sum of $10,380, etc.," prayed for judgment for said sum of $10,380, as well as cancellation of said contract. We think that the contract is not to be construed as imposing an absolute obligation on the lessee, either to drill or to pay the $10,380, but as simply providing that the doing of the one or the other of these things is necessary to prevent a termination of the contract after the expiration of the first year. Van Etten v. Kelly, 66 Ohio St. 605, 64 N. E. 560; Hays v. Forest Oil Co., 213 Pa. 556, 62 Atl. 1072; Glasgow v. Oil Co., 152 Pa. 48, 25 Atl. 232; Snodgrass v. Oil Co., 47 W. Va. 509, 35 S. E. 820; Brooks v. Krunkle, 24 Ind. App. 624, 57 N. E. 260; O'Neill v. Risinger, 77 Kan. 63, 93 Pac. 340; Archer Oil & Gas Co. Cases, p. 290. It is stipulated in the second paragraph of the contract that:

"Nothing in this paragraph contained shall obligate the lessee against its wish or option to make any such payment (that is, $10,380) in lieu of drilling operations, or to drill or otherwise carry on operations thereunder."

All further reference in the contract to the $10,380 is based on the provisions of the said second paragraph. The provisions of the third and second paragraphs of the contract are closely connected, and as we have already held that the provisions of the said paragraphs must be held to apply to the contract after oil is discovered, it would seem to follow, construing all of the provisions of the contract together, that the intent of the contract is to provide that the failure to drill or to make certain payments in lieu of drilling merely terminates the contract, and that is the only contractual liability that can be enforced against the lessee for failure to do either of these things. We are not called upon to decide what might be the oil company's liability in tort for wrongfully claiming to hold the land under a wrongful construction of the contract.

[4] But even if the contract did impose an absolute obligation either to drill or to pay the sum of $10,380 every 6 months in lieu thereof, the lessor would then have the option either of enforcing the contract or terminating it on account of failure to do the one or the other of these things. By the institution of the suit on January 30th, before the expiration of the 6-month period, during which the contract would have been in force had the $10,380 been paid, the lessor elected to forfeit the contract on account of the lessee's default. The payment would have obviated the forfeiture. Appellant cannot invoke both the forfeiture for nonpayment, and then collect the money on account of the nonpayment of which the forfeiture was sought. Clemenger v. Flesher, 185 S. W. 304.

The judgment will be reversed and reformed, as we have indicated, and all costs taxed against the appellees.