## CHARLESTON.

### SCHAUPP *v*. HUKILL.

Submitted November 21, 1890—Decided December 6, 1890.

1. LEASE—FORFEITURE.
    F. having given one "oil lease" to H. afterwards gave another "oil lease" of the same property to S. on which second lease was endorsed before execution : "This lease to be taken subject to the E. M. Hukill lease." HELD :
    The second lease is not an unequivocal declaration of forfeiture of the first lease.

2. LEASE—CANCELLATION.
    The first lease having by mistake been handed back to the lessor to be cancelled, HELD :
    The above endorsement saves to H. his right, if any, to have such mistake corrected.

*O. Johnson, W. P. Hubbard* and *Keck & Son* for plaintiffs in error.

*O. Johnson* cited :

Wood Land. & Ten. § 286 ; Cro. Jac. 456 ; 4 M. & S. 30 ; Cath. 438 ; 1 B. & P. 73 ; 16 Q. B. 745 ; 1 Stark. 162 ; 45 Am. Dec. 210 ; 58 Am. Dec. 734 ; Tayl. Land. & Ten. § 492 ; 4 B. & Ald. 401 ; 6 B. & C. 519 ; 1 M. & W. 402 ; 124 Mass. 534 ; 12 Ired. L. 194 ; 29 Conn. 331 ; 51 N. J. L. 34 ; 123 Pa. St. 491 ; Wills *v*. Nat. Gas Co. 131 Pa. St. ; 77 Cal. 299 ; 8 S. E. Rep. 778 ; 1 Comst. 96 ; 19 Conn. 114 ; 7 W. Va. 289, 339 ; 2 Wall. 283, 311 ; 22 W. Va. 434 ; 2 Leigh 84 ; 1 Comst. 109 ; 1 Hill 19 ; 13 W. Va. 822 ; 4 H. & M. 23 ; 3 H. & M. 399 ; 3 Call 194 ; 2 Pars. Cont. 148, n. f. 152, 153, n. 3 Pick. 414 ; 5 Pick. 187 ; Id. 240 ; 8 Wend.

562; 4 Pick. 450 ; 29 Eng. L. & Eq. 498 ; 2 M. & W. 223 ; 2 Bro. & Bing. 165 ; 2 M. & S. 120 ; 31 W. Va. 622.

*Berkshire & Sturgiss* and *Cox & Baker* of counsel for defendants in error, cited : 9 East 23 ; 1 Bibb 389 ; 2 B. Mon. 353.

*James Breden* of counsel for defendants in error, cited 7 Norris 450 ; Id. 465.

*Caldwell & Caldwell* of counsel for defendants in error cited :
   30 W. Va. 488 ; 29 W. Va. 528 ; 102 U. S. 64 ; 107 U. S. 437 ; 111 U. S. 584 ; 19 W. Va. 483 ; 26 W. Va. 469 ; 33 W. Va. 56 ; 11 S. E. Rep. 754 ; 29 Charles II, ch. 3 ; 6 Ired. L. 131 ; 13 M. & W. 285 ; Co. Litt. 336a ; Wood Land. & Ten. § 497 & notes ; Tayl. Land. & Ten. §§ 509–518 ; 3 H. & M. 463 ; 7 Gratt. 121 ; 18 Gratt. 150 ; 79 Va. 409 ; 2 Lom. Dig. 145 (t. p.) ; 2 Min. Inst. 714, 715 ; 94 U. S. 389 ; 2 Hern. Estop. & Res. Ad. §§ 879–884 & notes ; 2 Th. Co. Litt. 554 ; 4 Bac. Abr. (7th Ed.) 880 ; Shep. Touch. 122 (302 s. p.) ; 9 W. Va. 343.

HOLT, JUDGE :

This was a writ in unlawful entry and detainer brought in the Circuit Court of Monongalia county on the 8th day of May, 1890, by Conrad A. Schaupp and others, plaintiffs below and defendants in error, against Edwin M. Hukill, defendant below and plaintiff in error, to recover from Hukill the possession, for the purpose of drilling and operating for petroleum and gas, of a certain tract of land containing by estimation four hundred and fifty acres situate in Clay district, Monongalia county, W. Va., adjoining and bounded by the lands of M. B. Jones and others, being the same land upon which Andrew M. Fox now resides, and the same which, by deed of lease bearing date the 2nd day of May, 1889, was leased by the said Andrew M. Fox to the said Conrad A. Schaupp, for the purpose of drilling and operating for petroleum and gas, for and during the term of twenty years from the date of said lease, and as much longer as oil and gas might be found in paying quantities,

complaining that Hukill is in possession of the land and unlawfully withholds from plaintiffs the possession for the purpose and to the extent aforesaid.

On the 19th day of June, 1890, defendant, Hukill, appeared by his attorneys and moved the court to quash the summons; and the motion was overruled; and thereupon the defendant entered the plea of not guilty, and issue was joined. Defendant, Hukill, claimed under an older lease from the same lessor, Andrew M. Fox, dated November 6, 1885, for twenty years, but for oil alone.

A jury was impanelled, and sworn to try this issue. To rulings of the court made during the progress of the trial, defendant, Hukill, took three bills of exception, and plaintiffs, Schaupp *et al.,* one. After the evidence was all in on both sides, plaintiffs below demurred thereto, and defendant by order of the court joined in the demurrer. Whereupon the jury was instructed to inquire whether the defendant, Hukill, unlawfully withholds from the plaintiffs the possession of the premises described in the warrant, for the purpose of operating thereon for petroleum and gas under the lease therein described from Andrew M. Fox and wife to C. A. Schaupp, in case judgment should be given for the plaintiffs on said evidence. Thereupon, the jury returned this verdict:

"We, the jury, if the court be of opinion that the law is for the plaintiffs on the demurrer to the evidence, find that the defendant unlawfully withholds from the plaintiffs the premises described in the warrant, for the purpose of drilling and operating thereon for petroleum and gas, and, if the court shall be of opinion that the law is for the defendant on the demurrer to the evidence, then we find for the defendant."

On the 24th day of June, 1890, the Circuit Court overruled defendant's motion for a new trial and motion in arrest of judgment, and on the demurrer to the evidence gave judgment for plaintiff as follows: "It seems to the court that the matter shown in evidence is sufficient to maintain the issue on the part of the plaintiffs. Wherefore, it is considered that the plaintiffs recover from the defendant, E. M. Hukill, the possession of the premises de-

scribed in the summons in this case, for the purpose of operating thereon for oil and gas, under the lease therein described from A. M. Fox and wife to C. A. Schaupp." On writ of error and *supersedeas* to this judgment, the cause is now here to be reviewed.

The facts, in the main, appear by written instruments. There are a few, however, to be determined from verbal testimony by the rule applicable to demurrers to evidence. On the 6th of November, 1885, A. M. Fox, the lessor, was the owner in fee of the four hundred and fifty acres of land in dispute, subject to the life-estate of Nancy Fox, widow of Martin Fox, deceased, in three hundred and three and three fourths acres, part thereof. A. M. Fox, by his deed of that date, and which for brevity we may call an "oil lease," leased his land of four hundred and fifty acres to E. M. Hukill & Co., for the term of twenty years, for the sole and only purpose of developing, drilling for and producing petroleum or carbon oil. This was called the "E. M. Hukill Lease." It excepted fifteen acres immediately surrounding the house and orchard, to the extent that it was not to be drilled upon without the written consent of A. M. Fox and E. M. Hukill & Co. to deliver one eighth of the crude oil, Fox furnishing tankage. Fox was to use and enjoy the premises for tillage except such parts as were necessary for roads and development purposes. The lessees were to commence within nine months, or thereafter pay Fox eighteen dollars per month, until the work was commenced; and a failure to do one or the other was to work an absolute forfeiture. On the 15th of November, 1886, Hukill paid Fox fifty four dollars, which Fox receipted for as in full of rental to 6th November, 1886. On the 7th of March, 1888, E. M. Hukill by mistake sent this lease back to Fox, who by a writing under seal accepted its return and agreed that the same might be cancelled as of December 6th, 1886. This lease thus remained in the hands of Fox from the 7th of March, 1888, until the 20th of May, 1889, when it was returned to Hukill, as having been given up by mistake. During this time these lessees did not commence operations and paid no rent. While Fox held the lease thus given up, he was advised that the mere handing

back of the lease without any writing from Hukill was not sufficient to put an end to it; but, to use Fox's expression, "it might come to life again." On the 2d day of May, 1889, the plaintiff below, C. A. Schaupp, applied to Fox for an "oil lease" of the same land on which he, Fox, was then living and has lived during all this time. Fox showed Schaupp the Hukill lease told him that it had been returned to him through Garrard, Hukill's agent, and that he had signed the receipt above mentioned. Fox at length agreed to give Schaupp a lease for the term of twenty years for petroleum and gas subject to the E. M. Hukill lease. This last lease was executed by Fox and wife and by Schaupp in duplicate with the following indorsement written by Schaupp before execution, and made and intended to be a part of the instrument: "This lease is to be taken, subject to the E. M. Hukill lease." There was but one Hukill lease, the one executed to E. M. Hukill & Co. This last lease is as follows :

"This agreement made and entered into this 2d day of May, A. D. 1889, by and between A. M. Fox, of Clay district, of the county of Monóngalia, and state of West Va., of the first part, and C. A. Schaupp, of Renfren city, and state of Pennsylvania, of the second part, witnesseth : That the said party of the first part, for the consideration of the covenants and agreement hereinafter mentioned, has granted, demised, and let unto the party of the second part, his heirs or assigns, for the purpose, and with the exclusive right, of drilling and operating for petroleum and gas, all that certain tract of land situated in Clay township, Monongalia county, and state of West Va., and bounded and described as follows, to wit: North, by lands of Sarah Ann Cordray ; east, by lands of A. J. Morris; south, by lands of Daniel Michael's heirs ; west, by lands of Eugene Moore. It being the same farm on which said first party now resides, containing (450) acres, reserving ———— acres around the buildings upon which no well shall be drilled. The party of the second part, his heirs or assigns, to have and to hold the above-described premises, for and during the term of twenty years from the date hereof, and as much longer as oil or gas is found in paying quantities thereon, or as long as the

rental thereon is paid.   The said party of the second part, in consideration of the said grant and demise agree to give to the party of the first part, the full equal one eighth part of all the petroleum obtained or produced on the premises herein leased, and to deliver the same in tanks or pipe-lines. It is further agreed that, if gas is found in paying quantities, the consideration in full to the party of the first part, instead of the royalty, shall be two hundred dollars *per annum* for the gas from each well, when marketed.   The party of the first part grants the further privilege to the party of the second part of using sufficient water from the premises herein leased, necessary to the operation thereon, the right of way over said premises, together with the right to lay pipes to convey oil or gas from this or other property of party of the second part, the right to remove any machinery or fixtures placed on said premises by the party of the second part.   The test-wells shall be located in the hollows, or at such places as to do no unnecessary damage, and any damage done to growing crops by the operations of the second party shall be paid for by the said second party.   Operations on the above-described premises shall be commenced in six months from the date hereof, and, in case of failure to complete one well within such time, the party of the second part agree to pay to the party of the first part, for such delay, a yearly rental of ——— per acre from the time of completing such well, as above specified, payable by deposit at the ———, or directly to the party of the first part.   And the party of the first part agree to accept such sum as full payment for such delay until a well shall be completed, and a failure to complete a well, or to make such payment, as above mentioned, renders this lease null and void, and to remain without effect between the parties hereto.   Said second party is to pay said first party twenty dollars per month, until work is commenced on said premises, all payments to cease at the commencement of said lease, and one well completed.   It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to the heirs, executors, and assigns.   In witness whereof, we, the said parties of the first and second parts, hereunto set our hands and seals, the day and year

first-above written. A. M. Fox. [L. S.] C. A. Fox. [L. S.] C. A. Schaupp. [L. S.] Witness: L. M. Fox."

Indorsed on the back of said lease are these words: "This lease is to be taken subject to the E. M. Hukill lease."

Much testimony was taken to show how each party understood the endorsement, Schaupp claiming that he was to stand between Fox and Hukill, if Hukill brought any suit about it; Fox claiming that, if Hukill claimed his lease, then Schaupp was to give this one up. This, we think, was not competent evidence.

On the next day after the execution of the Schaupp lease *viz.*, May 3 1889, Fox met E. M. Hukill for the first time, the matter up to that point having been carried on for the Hukills by Garrard, the agent. E. M. Hukill saw the Schaupp lease, explained to Fox how his (Hukill's) lease had been sent back to be given up by mistake arising from confusion of names apparently convinced Fox that it was done by mistake, as Fox handed back to him his lease. Hukill paid Fox, May 20, 1889, five hundred and fifty eight dollars, for which Fox receipted as in full for rental on oil lease to June 6, 1889. On September 16, 1889, he gave Hukill a receipt for fifty four dollars, in full of rental on an oil lease to September 6, 1889, agreeing to thereafter accept his rental quarterly, and on December 3, 1889, gave Hukill a receipt for fifty four dollars in full for rental on oil-lease to December 6, 1889. On the 15th of November, 1889, George P. Hukill, the other part owner or partner assigned to defendant below, E. M. Hukill, all his interest in various leases, this one among them. Fox gave Hukill possession, who commenced his operation on the land the last of October, or the first of November, 1889. Schaupp attempted to make the monthly payments of twenty dollars as they fell due on his lease, up to some time in the early part of November, 1889, when he also attempted to commence operations on the land, but was stopped by Hukill, who was then in possession. Fox constantly declined to receive any and all money tendered by Schaupp, or in any way to recognize him as his tenant, or his lease as of any validity, after he had returned to Hukill his lease.

Nancy Fox, the widow of Martin Fox, deceased, it ap-

pears, was the life-tenant of three hundred and three and three fourths acres, part of the four hundred and fifty acres, and by deed, dated April 15, 1890, granted to Schaupp et al. the exclusive right to drill and operate thereon for oil and gas, the royalties to be paid to A. M. Fox. Where the three hundred and three and three fourths acres lie with reference to Hukill's drilling does not appear.

On the 8th of May, 1890, this suit was brought, and on the 17th day of June, 1890, Nancy Fox executed to Hukill an instrument, under seal, giving her consent and license to Hukill to enter upon the three hundred and three and three fourths acres, to develop the same for oil, and pay the royalties to A. M. Fox. Hukill stopped work in May, 1890, by order made in a suit for injunction. Who were parties plaintiff does not appear. The clause of forfeiture in Fox's lease to Hukill was put there for the benefit of Fox, the landlord, and it was for him to manifest in some unequivocal way his purpose to avail himself thereof and terminate the tenancy.

On behalf of Schaupp it is contended that Fox did thus manifest such intention to treat the Hukill lease as forfeited, by executing to Schaupp the lease of 2nd May, 1889, and that the words "to be taken subject to the E. M. Hukill lease," when given their proper meaning and legal effect, do not weaken or destroy the indication of such purpose; that Fox merely intended thereby to get rid of his implied warranty of title and right of possession; that it operated only as a covenant of indemnity for the protection of Fox against the Hukill lease, citing Moore's Appeal, 88 Pa. St. 450, and Samuel v. Peyton, Id. 465; that the true meaning and full scope thereof is given by holding it to mean that Schaupp was to take his lease at his own risk, and must be at the expense of whatever litigation may arise from the prior lease to Hukill.

On behalf of Hukill, it is claimed that, by use of the words "This lease is to be taken subject to the E. M. Hukill lease," the parties used terms well understood in law, which have the effect to carve out the first term before the second can commence, and Claflin v. Foley, 22 W. Va. 434; Tate v. Liggat, 2 Leigh, 84; and other cases cited.

In this case, we should exclude the verbal declarations of the parties made at the time and their declarations on the witness-stand of what they meant, and put ourselves as near as may be in the place of the contracting parties, take into consideration the subject-matter and the situation of the parties, and then give the words of the contract, read as a whole by the light of the surrounding circumstances, a fair and common-sense interpretation.

The Hukill lease was made on the 6th day of November, 1885. On the 15th day of November, 1886, fifty four dollars in full rental to 6th November, 1886, was paid. On the 7th of March, 1886, by mistake of Hukill, the lease was given up to be cancelled Hukill signing nothing, but Fox giving his receipt under seal agreeing that the lease might be cancelled as of 6th December, 1886. In the meantime, Fox took legal advice on the subject, and was told that the lease might not be dead, or "might come to life again." On the 2nd day of May, 1889, Schaupp applied for a lease. Fox preserved the Hukill lease. He read it himself, showed it to Schaupp and gave Schaupp his lease of 2nd May, 1889, insisting and requiring that it should be taken subject to the Hukill lease, to be so expressed as a part of the lease. This Schaupp did by indorsing on the lease before execution: "This lease is to be taken subject to the E. M. Hukill lease."

The subject of the contract was an oil-lease, and Fox being anxious to have his land developed for oil was disposed to take all chances, seeming not to be able to develop it himself. But he had been told that the Hukill lease might come to life, not having been surrendered by deed or writing of any kind. So at that stage, when it was his to say, because it was his to give on his own terms, he manifested a purpose not to treat as forfeited but rather to keep unimpaired by any act of his all rights or interests Hukill might have in the instrument thus given up. The right of Hukill to have it given back, as given up by mistake, was neither known nor thought of, but it happened to be none the less provided for. Plainly he intended to preserve unimpaired all of Hukill's rights legal or equitable, whether they were known by him or not—Hukill's right to some manifesta-

tion of intent to treat his lease as forfeited; his right to have his lease given back because given up by innocent mistake. So, no doubt, he also intended to preserve and retain his own rights, if any, under that instrument, so that if by any means it should be brought to life against him, it should also have life for him. He also meant no doubt to keep in his own hands the right to back rent and other rights, if any, and the right to assert and maintain them. In my view, Fox was very far from saying: "I have no longer any interest in the Hukill lease, except to be liable to him for anything he may still be entitled to, and as to that I take the personal covenant of indemnity of an utter stranger being at a distance." Still less did he mean to say: "The Hukill lease is forfeited, and I hereby so declare it." Under and subject to a mortgage or other incumbrance it might, as in *Moore's Appeal*, 88 Pa. St. 450, be held as between grantor and grantee to be only a covenant of indemnity, but it would also show that the grantee had notice of the incumbrance mentioned, and that the grantor, if he could do so, did not intend thereby to impair any of the rights or remedies of the incumbrancer. Neither do I think a fair and common-sense construction of this lease to Schaupp read as a whole with reference to the peculiar nature of the subject-matter and the situation of the parties, and by the light of the surrounding circumstances, has the effect to carve out the first term before the second one can, under any circumstances, begin in possession. But these questions are apart from this inquiry and may be settled one way or the other without directly involving the point here discussed.

It is also assigned by appellant as error that the summons is defective. It conforms in all respects with the requirements of the statute. It is also made ground of assignment of error that the lease of Schaupp, plaintiff, was forfeited, and that on that ground also he was not entitled to recover. Another suit seems to be pending involving no doubt among other things the validity of the Schaupp lease, and the decision of it here is not necessary. The exclusive license to bore for oil obtained by Schaupp of Nancy Fox, the life-tenant of three hundred and three and three fourths

acres, part of the four hundred and fifty acres in contro-versy, does not help his case; for it does not appear that Hukill's possession of the surface is on the part owned by the life-tenant. Neither could she give any such right to one who had no present right to the oil, one of the minerals undeveloped belonging to the inheritance. It would have been waste in the life-tenant to bore for oil, and Schaupp can stand on no higher ground. He can not recover the surface from Hukill for any such purpose, and he sues for nothing else. He may have the right to stop or forbid Hukill from boring on the three hundred and three and three fourths acres, but to undertake to decide that question would be here out of place.

The exception taken by plaintiff below to the admissibility of certain testimony permitted to be given by A. M. Fox and his wife for the purpose of explaining the indorsement on the lease has been already passed upon. Such evidence was incompetent. I am, therefore, of opinion that the matter shown in evidence to the jury is not sufficient in law to maintain the issue on the part of plaintiffs below. Therefore, it is considered by the Court that the judgment of the court below on the demurrer to evidence be reversed; that the said summons be dismissed; and that E. M. Hukill, the defendant below, recover against C. A. Schaupp and others, the plaintiffs below, his costs in this behalf expended in the court below, and also his costs in this Court.

REVERSED.

# CHARLESTON.

