# CHARLESTON.

LOWTHER OIL Co. *v.* JAMES M. GUFFEY.

Submitted June 7, 1902.    Decided November 29, 1902.

1. ANNUAL LEASE—*Forfeiture—Limitation.*

Where a grant of oil and gas, and oil and gas privileges, in consideration of one dollar, without limitation as to time, contains a forfeiture clause in these words: "In case no well is completed within two years from this date, then this grant shall immediately become null and void as to both parties, provided that second party may prevent such forfeiture from year to year by paying to the first annually in advance eighteen and seventy-five one hundredths dollars at her residence until such well is completed," such lease is thereby converted into a lease from year to year at the option of the lessee until a well is completed. It would then continue so long as oil or gas is produced in paying quantities. (p. 91).

Appeal from Circuit Court, Calhoun County.

Bill by the Lowther Oil Company against James M. Guffey and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

EDWARD A. BRANNON and R. L. BLAND, for appellants.

JOHN M. HAMILTON and T. P. JACOBS, for appellee.

DENT, PRESIDENT:

James M. Guffey appeals from a decree of the circuit court of Calhoun County, cancelling a certain oil and gas lease executed to him by Ella Yoak and husband, in a certain chancery suit wherein appellant was defendant and. the Lowther Oil Company was plaintiff.

This lease was dated the 13th day of April, 1895, and because of its importance in the determination, is copied in full as follows, to-wit:

"In consideration of the sum of one dollar the receipt of which is hereby acknowledged, Ella Yoak and Agnew Yoak, of Athens County, State of Ohio, first part, hereby grant unto James M. Guffey, of Pittsburg, Pennsylvania, second party, their heirs and assigns, all the oil and gas in and under the following described premises, together with the right of ingress and egress at all times, for the purpose of drilling and operating for oil, gas or water, and to conduct all operations and lay all pipes necessary for the production and transportation of oil, gas or water, taken from said premises, reserving however to first party, the equal one-eighth ($\frac{1}{8}$) part of all oil produced and saved from said premises, to be delivered in the pipe line to the credit of the first party free of charge, all that certain lot of land, situate in the district of Center, county of Calhoun in the State of West Virginia, bounded and described as follows, to-wit:

"North by lands of Taylor heirs; east by lands of Holbert; west by lands of James Metz; south by lands of Wilson Richards, containing seventy-five acres more or less.

"To have and to hold the above premises unto the parties of the second part, their heirs and assigns, on the following conditions: If gas only is found, second party agrees to pay two hundred dollars each year in advance for the product of each well, while the same is being used off the premises. Whenever first party shall request it, second party shall bury all oil and gas lines, and pay all damage done to growing crops by reason of burying and removing said pipe lines.

"No well shall be drilled nearer than 500 feet to the house or barn on said premises. In case no well is completed within two years from this date, then this grant shall immediately be-

come null and void as to both parties, provided that second party may prevent such forfeiture from year to year by paying to the first party annually in advance eighteen & 75-100 dollars at her residence until such well is completed. The second party shall have the right to use sufficient gas, oil or water to run all necessary machinery for operating said well, and also the right to remove all their property at any time. It is understood between the parties to this agreement that all conditions between the parties hereunto, shall extend to their heirs, executors and assigns.

"In witness whereof, the parties hereto have hereunto set their hands and seals, the 13th day of April, A. D. 1895.

"ELLA YOAK          (seal)

"A. T. YOAK          (seal)

"JAMES M. GUFFEY     (seal)

"Signed, sealed and delivered in the presence of H. C. Sher ard, J. F. Kimpton."

Appellant did not drill a well on the land but paid up the commutation money until the 13th day of April, 1901. In March, 1901, he took possession and began drilling and tendered his lessors the commutation money of eighteen dollars and seventy-five cents and a further sum increasing the aggregate to seventy-five dollars if they would permit him to continue operations without molestation. They having executed a second lease to the Lowther Oil Company, the plaintiff on the 3d day of October, 1900, subject to appellant's lease, declined appellant's tender. Thereupon the plaintiff instituted this suit and succeeded in having appellant's lease held void and all operations thereunder perpetually enjoined. This whole case therefore depends on the validity of appellant's lease.

An examination of it shows that it is a lease or grant of all the oil and gas under a certain tract of land in consideration of one dollar in hand paid and the reservation of one-eighth of the oil when produced and two hundred dollars annual gas rental for each well, subject to a forfeiture clause in these words: "In case no well is completed within two years from this date, then this grant shall immediately become null and void as to both parties, provided that second party may prevent such forfeiture from year to year by paying to the first annually in advance eighteen & 75-100 dollars at her residence, until such

well is completed." This latter clause converts what would be otherwise, a perpetual grant into a lease from year to year, at the option of the lessee until oil and gas are produced and then to continue so long as they are produced in paying quantities. This lease is very different from the one passed on in the case of *Eclipse Oil Co.* v. *South Penn Oil Co.,* 47 W. Va. 84, (34 S. E. 923). While one dollar is a small consideration yet it is a valuable consideration and the court cannot say that it was inadequate under the circumstances, as the lessors did not consider it so. It was only intended to hold the grant for two years and after that time a further consideration to prevent forfeiture was provided. During the two years the lessors did not object to the adequacy of the consideration and it is too late to do so now. Such consideration for a similar lease has been held sufficient. *Allegheny Co.* v. *Snyder,* 106 Fed. Rep. 764; *Brown* v. *Oil Co.,* 21 Ohio C. C. 117; *McMillan* v. *Philadelphia Co.,* 159 Pa. 142; *Petroleum and Gas,* (Donahue) 156.

Inadequacy of consideration is not alone sufficient to invalidate a lease, although where it is grossly inadequate it is regarded as proof of fraud. 6 Am. & En. En. Law (2d Ed.) 696-700.

There is no pretense of fraud in this case. After the expiration of two years, the sum of $18.75 was agreed upon between the parties as an adequate consideration to prevent forfeiture, if paid in advance from year to year until a well was completed. The court cannot say that it was not. It was paid promptly and received by the lessors and no forfeiture of the lease could possibly occur.

The question of importance in this case is whether the lessee had the option to continue the lease from year to year by the payment annually of the non-forfeiture sum. This is the way in which the lease reads. The manacles were forged by the lessors themselves with their eyes open, and the court cannot remove them unless fraud can be shown or the contract is so unfair and uneven as to render its enforcement equivalent to the perpetration of fraud upon the lessors. It is claimed that this is a case of such character because the lessee by the prompt payment of the non-forfeiture sum could perpetually prevent the development of the land for oil and gas. It is not, however, probable that he would do so, and he is already actively engaged

in drilling. If it could be shown that such was his purpose, it would amount to a fraud which equity might relieve against, for the reason that the primary object of the lease is the development of the land and production of oil royalties and gas rentals, and equity will not tolerate a fraudulent delay in operation. No such delay has occurred here, but the lessee has only waited until he could ascertain that there was a strong probability of obtaining oil or gas before expending the large sums necessary in the proper development of the land. This seems to have been the object of the provision in permitting him to postpone the development from year to year. The lessors have become impatient at a delay, to which they consented, and which has not been shown to be unreasonable.

Impatience on their part is no ground for the interference of a court of equity.

The plaintiff's lease was taken with full knowledge of and subject to the appellant's lease and hence it has no rights thereunder until appellant's lease is forfeited. *Scrupp* v. *Nukill,* 34 W. Va. 375, (12 S. E. 501) ; *Nukill* v. *Myers,* 36 W. Va. 639, (15 S. E. 151) ; *Elk Fork Oil and Gas Co.* v. *Jennings,* 84 Fed. 839.

As appellant's lease is not forfeited or capable of being forfeited at the present time, the circuit court erred in holding it void. The decree complained of is reversed, the injunction dissolved and the bill dismissed.

*Reversed.*