UNITED STATES v. COMET OIL & GAS CO. et al.

COMET OIL & GAS CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.    January 30, 1913.)

Nos. 3,696, 3,697.

1. INDIANS (§ 16*)—INDIAN LANDS—GAS LEASE—BOND.

Where a gas lease of Creek Indian lands provided that the lessee should sink one well within 12 months, and on failure to do so the Secretary of the Interior might declare the lease void after 10 days' notice, except that the lessee might have the privilege of avoiding the exercise of such right by the Secretary for 5 years by paying in addition to the advance royalties the sum of $1 per acre, the lessee, never having indicated a desire to exercise such privilege after notice of the Secretary's election to terminate the lease for failure to sink the well as provided, was not liable in an action on the bond for such stipulated sum.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 45; ° Dec. Dig. § 16.*]

2. INDIANS (§ 16*)—INDIAN LANDS—GAS LEASE—ROYALTIES.

Where a gas lease provided for advanced annual royalty of 15 cents per acre per annum for the first and second years, 30 cents per acre per annum for the third and fourth years, and 75 cents per acre per annum for the fifth and each succeeding year thereafter, and the Secretary of the Interior canceled the lease November 30, 1909, because of the lessee's failure to pay the third year's advanced royalty, which was due April 18, 1909, the government was entitled to recover the entire year's advanced royalty for 1909, and not merely a proportionate part thereof.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 45; Dec. Dig. § 16.*]

In Error to the Circuit Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action at law by the United States against the Comet Oil & Gas Company and the Federal Union Surety Company. A demurrer to the petition was sustained in part and overruled in part (187 Fed. 674), and both parties bring error. Reversed and remanded, with directions.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

202 F.—54

Wm. J. Gregg, U. S. Atty., of Tulsa, Okl. (J. C. Denton, Asst. U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

J. H. Huckleberry, of Muskogee, Okl., for Comet Oil & Gas Co.

Robert J. Boone, of Muskogee, Okl. (George C. Butte and S. H. Lattimore, both of Muskogee, Okl., on the brief), for Federal Union Surety Co.

Before ADAMS and SMITH, Circuit Judges, and WILLARD, District Judge.

SMITH, Circuit Judge. On April 18, 1907, George Wolf, a full-blood Creek Indian, executed and delivered to the Comet Oil & Gas Company an oil and gas mining lease for 15 years of his allotment of 160 acres of land in Oklahoma in the form prescribed by the Secretary of the Interior. On July 6, 1907, the Comet Oil & Gas Company, as principal, and the Federal Union Surety Company, as surety, executed and delivered to the United States their bond in the sum of $2,000 conditioned that:

"If the above-bounden Comet Oil & Gas Company shall faithfully carry out and observe all the obligations assumed in said indenture of lease by it, and shall observe all the laws of the United States, and regulations made, or which shall be made thereunder, for the government of trade and intercourse with Indian Tribes, and all the rules and regulations that have been, or may be, lawfully prescribed by the Secretary of the Interior under sections 19 and 20 of the act approved April 26, 1906, relative to leases executed by allottees of the Five Civilized Tribes, in Oklahoma, then this obligation shall be null and void; otherwise to remain in full force and effect."

August 26, 1907, the Secretary of the Interior approved said bond and lease. The lease contained the following provisions:

"And the party of the second part further agrees and binds itself, its heirs, successors, and assigns, to pay, or cause to be paid to the said agent (the United States Indian agent, Union Agency, Indian Territory), for lessor, as advanced annual royalty on this lease, the sums of money as follows, to wit: Fifteen cents per acre per annum, in advance, for the first and second years; thirty cents per acre per annum, in advance for the third and fourth years, and seventy-five cents per acre per annum, in advance for the fifth and each succeeding year thereafter of the term for which this lease is to run; it being understood and agreed that said sums of money so paid shall be a credit on the stipulated royalties; and further, that should the party of the second part neglect or refuse to pay such advanced annual royalty for the period of sixty days after the same becomes due and payable, the Secretary of the Interior, after ten days notice to the parties, may declare this lease null and void, and all royalties paid in advance shall become the money and property of the lessor.

"The party of the second part further covenants and agrees to exercise diligence in the sinking of wells for oil and natural gas on the lands covered by this lease, and to drill at least one well thereon within twelve months from the date of the approval of the bond by the Secretary of the Interior, and should the party of the second part fail, neglect, or refuse to drill at least one well within the time stated, this lease may, in the discretion of the Secretary, be declared null and void, after ten days notice to the parties; provided, that the lessee shall have the privilege of delaying operations for a period not exceeding five years from the date of the approval of the bond to be furnished in connection herewith, by paying to the United States Indian agent, Union Agency, Indian Territory, for the use and benefit of the lessor, in addition to the required annual advanced royalty, the sum of one dollar per acre per annum for each leased tract remaining undeveloped,

but the lessee may be required to immediately develop the tracts leased, should the Secretary of the Interior determine that the interests of the lessor demand such action."

"And it is mutually understood and agreed that this indenture of lease shall in all respects be subject to the rules and regulations heretofore or that may hereafter be lawfully prescribed by the Secretary of the Interior relative to oil and gas leases in the Creek Nation, and that this lease, or any interest therein, shall not, by working or drilling contract or otherwise, or the use thereof, directly or indirectly, be sublet, assigned, or transferred without the consent of the Secretary of the Interior first obtained, and that should it or its sublessees, heirs, executors, administrators, successors, or assigns violate any of the covenants, stipulations, or provisions of this lease, or any of the regulations, or fail for the period of sixty days to pay the stipulated royalties provided for herein, then the Secretary of the Interior, after ten days from notice to the parties hereto, shall have the right to avoid this indenture of lease and cancel the same, when all the rights, franchises, and privileges of the lessee, its sublessees, heirs, executors, administrators, successors, or assigns hereunder, shall cease and end without resorting to the courts and without further proceedings, and the lessor shall be entitled to immediate possession of the leased land and the permanent improvements located thereon."

The Comet Oil & Gas Company paid the advanced royalty of 15 cents per acre for the first and second years, but failed to pay the advanced royalty of 30 cents per acre, amounting to $48, for the third year, and never drilled any well.

November 30, 1909, the Secretary of the Interior canceled the lease: First, because of the failure to pay the third year's advanced royalty; and, second, because of the failure to pay the dollar an acre per annum for two years for failure to sink a well amounting to $320.

This suit was subsequently brought to recover these sums of $48 and $320, or a total of $368.

The court sustained a demurrer to the petition as to the $320. United States v. Comet Oil & Gas Co. (C. C.) 187 Fed. 674. Thereupon the defendants answered, the case was submitted upon an agreed statement of facts, and the court rendered judgment against both defendants for $28.90, being the advanced royalty from the 18th day of April, 1909, to the 30th day of November, 1909, with interest, and for costs.

The United States sued out a writ of error, and the Comet Oil & Gas Company and the Federal Union Surety Company did likewise.

[1] The lease provided that the lessee should sink one well for oil and gas within 12 months, and upon its failure so to do the Secretary of the Interior might declare the lease void after 10 days' notice. It then provided that the lessee might have the privilege of avoiding the exercise of this right by the Secretary of the Interior for five years by paying in addition to the advance royalties the sum of $1 per acre. The Comet Oil & Gas Company never in any way indicated any desire to obtain this privilege. The conferring upon it of the privilege in no way bound the company to avail itself of this option. The contract provided for ten days' notice of the intention of the Secretary of the Interior before he could declare the lease void, and during this period it was doubtless within the right of the Comet Oil & Gas Company to announce its purpose to avail itself of this privilege; but the con-

tention of the government would convert what the contract called a privilege into an obligation.

This view finds considerable support in the authorities. Snodgrass v. South Penn Oil Co., 47 W. Va. 509, 35 S. E. 820; Lowther Oil Co. v. Guffey, 52 W. Va. 88, 43 S. E. 101; Glasgow v. Gas Co., 152 Pa. 48, 25 Atl. 232; Van Etten v. Kelley, 66 Ohio St. 605, 64 N. E. 560; Brooks v. Kunkle, 24 Ind. App. 624, 57 N. E. 260.

It.is contended that by its terms the lease was subject to the rules and regulations theretofore and thereafter adopted in relation thereto by the Secretary of the Interior, but no such rule or regulation materially changing this construction has been called to our attention.

It is concluded that the ruling on demurrer ought to be affirmed.

[2] The government insists that the Comet Oil & Gas Company, and its surety are liable for the whole amount of the advance royalty for the third year, or $48, and the defendants insist that they are not liable at all for the third year's advance royalty.

The court apportioned this royalty. The Secretary of the Interior had power to have declared this lease void because of the failure to drive one well within 12 months of the approval of the bond, but neither had the well been driven nor the advance royalty for the third year paid in November, 1909, and the Secretary of the Interior canceled the lease for both reasons.

While these royalties are styled in the lease "advanced royalties," they constitute guaranteed minimum rent. Thornton on Oil & Gas (2d Ed.) § 221. The case therefore presents the question whether the Secretary of the Interior could on November 30, 1909, declare the lease canceled for nonpayment of the guaranteed minimum rent, then recover for rent due in advance on April 18, 1909, and, if he could recover at all, could he recover for the entire year from April 18, 1909, to April 18, 1910, or only the reasonable value of the use of the premises up to the time of the eviction?

Without a special provision in the lease or by statute rent can never be apportioned with respect to time.

In Dexter v. Phillips, 121 Mass. 178, 23 Am. Rep. 261, Gray, Chief Justice, said:

"It is a general rule of the common law, followed in chancery, that sums of money, payable periodically at fixed times, are not apportionable during the intervening periods. It is accordingly well settled, both at law and in equity, except when otherwise provided by statute, that a contract for the payment of rent at the end of each quarter or month is not apportionable in respect of time."

In Perry v. Aldrich, 13 N. H. 343, 38 Am. Dec. 493, the same rule is laid down, citing numerous English and American authorities commencing with Lord Coke and including Chancellor Kent.

In Jones v. Carter, 15 Meeson & Wellsby, 718, cited by the surety company, it is simply held by the Court of Exchequer that it being for the landlord to insist upon or waive a forfeiture for breach of condition by the lessee, under the well-known doctrine of election, if one bring suit in ejectment he irrevocably elects to declare a forfeiture and cannot sue for rent falling due subsequent thereto.

This being true, the question at once arises: Was the government entitled to recover all or none of the third year's rent?

In Werner v. Padula, 49 App. Div. 135, 63· N. Y. Supp. 68, it was held that a provision in a lease, that, in case of total destruction of the leased building by fire or otherwise, the rent should be paid up to the time of such destruction and from thenceforth the lease should come to an end, did not, in case of a total destruction of the building after rent in advance became payable but long before the rent was earned, authorize an apportionment of such rent, but that under the covenant the landlord was entitled to the whole installment of rent payable in advance before the ·destruction. This case was affirmed in the Court of Appeals of New York by the unanimous vote of all the judges sitting. Werner v. Padula, 167 N. Y. 611, 60 N. E. 1122; McAdam on Landlord & Tenant (4th Ed.) 511, 995, 1028, 1032, 1361. In Gugel v. Isaacs, 21 App. Div. 503, 48 N. Y. Supp. 594, the plaintiff leased to the defendant premises commencing May 1, 1894, at $250 a month payable in advance except the last three months were to be paid in advance on February 1, 1897. October 15, 1895, the Board of Education of New York started condemnation ·proceedings, and on February 3, 1897, the title vested under them in the city of New York. The plaintiff brought suit for $750, being the amount stipulated to be paid in advance on February 1st. The defendant wanted to apportion and offered to allow judgment for $21.66, being the pro rata rent including February 3d; but the court held the plaintiff was entitled to judgment for the entire $750 which became due on February 1st. This was affirmed by the Court of Appeals. Gugel v. Isaacs, 162 N. Y. 636, 57 N. E. 1111. In Bernstein v. Heinemann, 23 Misc. Rep. 464, 51 N. Y. Supp. 467, it was expressly held that, under a lease which provided for payment monthly in advance, the lessor could recover the whole month's rent, although he had dispossessed the tenant during the month for the nonpayment in advance. See Giles v. Comstock, 4 N. Y. 270, 53 Am. Dec. 374; Astor v. Turner, 11 Paige (N. Y.) 436.

"The eviction does not affect arrears of rent, but only that accruing after the eviction; and the rule is the same although the rent is payable in advance. and the eviction occurs before the expiration of the period in respect to which the rent is claimed." McAdam on Landlord & Tenant (4th Ed.) 1435.

There seems ·to be no doubt that the United States was entitled to judgment on the agreed statement of facts against both the defendants for the full third year's advance royalty or for $48, together with interest thereon at 6 per cent.. per annum from the 18th day of April, 1909, and the costs of this action, and the case is reversed and remanded, with directions to set aside the judgment heretofore entered and enter judgment in accordance with this opinion.