**BUIE et al. v. PORTER et al.**   (No. 9402.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 27, 1920. Rehearing Denied Jan. 15, 1921.)

1. **Mines and minerals** ⬯78(7)—**Abandonment of oil lease by failure to drill held for jury.**

Whether lessee abandoned oil lease by failure to drill wells *held*, under the evidence, question for jury.

2. **Mines and minerals** ⬯58—**Option in lease either to drill or make annual payment held supported by consideration.**

Lessee's payment of $1,000 to lessor on execution of oil lease *held* sufficient consideration for option in lease to either drill or pay lessor $1,000 annually in lieu thereof.

3. **Mines and minerals** ⬯78(2)—**Lessee cannot, by paying rent, prolong lease executed for nominal cash consideration, where real consideration was development.**

A lessee cannot prolong the life of an oil lease by mere payment of rental, where the cash consideration is merely nominal, and where it is evident by terms of lease as a whole that the real consideration was development for oil.

4. **Mines and minerals** ⬯78(2)—**Lease may be continued in force by either drilling well or optional payments, where it so provides.**

If a lease provides that it shall be null and void, and all rights under it shall determine, if a well be not drilled within a time stated, or unless the lessee pay a stipulated rental for delay in drilling well, or until one be completed such lessee may continue lease

in force during term in which it was given by payment of rental.

**5. Mines and minerals ⬤⟞58—Ordinance regulating drilling of wells did not invalidate lease.**

City ordinance, which merely regulated drilling of oil wells and did not absolutely prohibit drilling for oil, but contemplated that drilling might be in such manner or under such conditions as to receive approval of city's building inspector, did not invalidate oil lease, though building inspector testified that he could not grant permission to drill well on land covered by such lease, since it cannot be said as a matter of law that the ordinance will continue for full term of oil lease, or that such building inspector will continue in office, or that his successor will view condition with like effect.

*On Motion for Rehearing.*

**6. Guardian and ward ⬤⟞44—Guardian's surface lease without order of court held valid.**

Guardian, having executed leases of mineral interests of minors pursuant to order of court under Vernon's Sayles' Civ. St. arts. 4152a and 4152b could make a valid lease of the surface without an order from the probate court therefor, under articles 4134 and 4136, where such surface lease related to improved property.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by J. D. Porter and others against E. H. Buie and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Slay, Simon & Smith, A. W. Christian, and Gillentine & Gillentine, all of Fort Worth, for appellants.

R. C. Fuller and A. J. Clendenen, both of Fort Worth, for appellees.

CONNER, C. J. This suit was instituted on the 21st day of May, 1919, by the appellees J. D. Porter and wife, Matilda Porter, and by said J. D. Porter as guardian of the estate of Thomas A. Jackson and Jerry Jackson, minors, against the appellants, E. H. Buie, W. A. Gillentine, and Ranger-Worth Oil Association, to cancel certain leases on lots 1 and 2, in block 20, in the town of Ranger, Eastland county. The suit as to Gillentine and Ranger-Worth Oil Association was dismissed before judgment was rendered.

The appellees alleged in their petition that on July 18, 1918, the said J. D. Porter and Matilda Porter executed an oil and gas lease on their one-half interest in said lots 1 and 2 to E. H. Buie and W. A. Gillentine; that on August 6, 1918, said J. D. Porter, as guardian of said minors, acting under order of the county court of Tarrant county, executed an oil and gas lease to the minors' undivided one-half interest to the same parties. It was further alleged that on August 17, 1918, the said J. D. Porter and wife, for themselves, and said J. D. Porter as guardian for said minors, rented to said E. H. Buie the surface of said lots, for a period of four years, for a consideration, in each case, of $50 per month. Said surface leases provided that, should the oil and gas leases theretofore executed be terminated from any cause in less than four years, then in that event said surface leases should terminate at the same time. The plaintiffs sought to cancel the oil and gas leases on the ground that the lessees had abandoned the purpose of drilling a well on said land, and on the further ground that by the enactment of an ordinance in the city of Ranger the contract to drill had become impossible of performance. Upon the conclusion of the evidence the court gave a peremptory instruction to the jury to find for the plaintiffs, and from a judgment in accord with the instruction the appellant E. H. Buie has appealed.

The oil and gas lease of July 13, 1918, by J. D. Porter and wife to E. H. Buie and W. A. Gillentine, recited that its execution was in consideration of the sum of $1 "to them in hand well and truly paid, the receipt of which" was acknowledged, and "in full consideration of the covenants and agreements hereinafter mentioned," and conferred the right upon Buie and Gillentine to enter upon the lots mentioned for the purpose of operating and drilling for petroleum or gas or mineral substances, lay pipe lines, erect necessary buildings, etc., "for and during the term of 10 years from the date" of the contract, and "so long thereafter as oil or gas or mineral substances can be produced in paying quantities." The contract provided for the lessors to have one-eighth of the royalties in the oil and gas that might be produced. The contract has this further provision:

"The party of the second part [Buie and Gillentine] agrees to commence operations within one year from the execution of this lease or in lieu thereof thereafter to pay to the party of the first part [the lessors] $1,000 per annum until work is commenced."

The contract contained a further provision to the effect that the lessees might surrender it and be relieved from its covenants, and that all its conditions should extend to the heirs, executors, and assigns of the lessees. The contract contained a further stipulation to the effect that the parties of the second part should—

"make an earnest effort to organize a corporation with a capital stock of $50,000 for the purpose of drilling a well on said lease, and that party of the first part shall receive as a consideration for said above lease 100 shares of stock in said proposed corporation at a par value of $10 each, and that in case said corporation is not organized within a reasonable time, or party of the second part shall abandon said project, then party of the first part

agrees to accept $1,000 in cash in lieu of said 100 shares of stock."

The oil and gas lease executed by J. D. Porter as guardian for the minors on August 6, 1918, was upon a consideration of $1,000 in cash paid and in terms substantially the same as the lease theretofore executed by Porter and wife in their own interest. The surface leases executed by Porter and wife for their own interests, and by J. D. Porter as guardian for the minors, were executed, as the evidence shows, about the 17th day of August, 1918. The leases were made to extend for a period of four years from said date, for a consideration in each lease of $2,400, payable $50 per month, beginning August 17, 1918, and ending August 17, 1922. The surface leases were made subject to the oil leases mentioned, and provided that, in event the prior oil leases were terminated under four years, then "this one shall terminate at the same time."

We are of the opinion that the court erred, as assigned, in giving the peremptory instruction. The proof shows without dispute that after the execution of the oil leases the Ranger-Worth Oil Association was formed for the purpose of promoting the leases. Appellee J. D. Porter accepted $1,000 of the stock of the association. He therefore is in no attitude to complain because it was not incorporated, as contemplated, in the oil leases. He not only accepted the stock in the association, but later sold it and received therefor the sum of $1,000 in cash. It is also undisputed that $1,000 in cash was paid by the lessees to Porter as guardian of the minors, and that the appellant Buie now lawfully holds and owns all interests created by both oil and gas leases; the surface leases were made to him individually.

There is evidence tending to show that appellant, after the execution of the surface leases, erected, and permitted to be erected, buildings on the lots in controversy at a cost of some $30,000, which are producing a rental of something like $1,500 a month, and that appellant Buie has not developed said lots for oil and gas, nor does he testify to a present fixed intention of so doing. Buie's testimony on this branch of the subject was to the effect that there was yet unoccupied space on the lots upon which he could drill, but that he did not intend to drill there unless some one else found oil in that vicinity in paying quantities; that he did not intend to drill there independently unless something was found better than they had; that he could not afford to drill.

[1] It cannot be said, however, as a matter of law, that the evidence shows an absolute abandonment in the sense which would authorize a forfeiture of the leases on that ground. The question of abandonment is a question of fact for a jury's determination. 1 Thornton on the Law of Oil and Gas, p. 249, § 155; Lowther Oil Co. v. Guffey, 52 W. Va. 88, 43 S. E. 101; Poe v. Ulrey, 233 Ill. 56, 84 N. E. 46. In the section of Thornton cited it is said:

"An abandonment rests upon the intention of the lessee to relinquish the premises, and is therefore a question of fact for the jury."

Appellant further testified on the subject, in answer to a question on the part of the court:

"I do mean to tell the court and jury that I intended, when I made the contract for $35,000 of building improvements on that lot, that I was also intending to drill; that is what I said, if deeper oil should be found."

There was evidence tending to show that several dry wells had been drilled in rather close proximity, and that the development in other wells had not been very encouraging, and appellant may, under the circumstances, have thought, and evidently did think, that it would be inadvisable to drill on the lots in question until some further development was made in the section. It is to be remembered, however, that the oil development in that territory has by no means been finished, or the entire field abandoned, and just what future developments may show cannot be foretold, and when it is considered that appellant has some $30,000 or more of improvements on the lots, and that he had erected them on the faith of his surface leases, and was therefrom getting a monthly rental of some $1,500, and that he knew from their terms that his surface leases were dependent upon a continuance of his oil and gas leases, it can hardly be said, as we have before observed, that his intent to abandon was so unmistakably manifest as to authorize the court to peremptorily instruct the jury to that effect. In this connection it must also be observed that the oil and gas leases contain no terms authorizing their forfeiture because of delay in drilling. On the contrary, the lessees' agreement was:

"To commence operations within one year from the date of this contract, or in lieu thereof to pay to the party of the first part $1,000 per year thereafter until work is commenced."

[2, 3] It is to be noted that there is no specific agreement to drill within one year; the option was given to the lessee to either drill within one year or in lieu thereof to pay the lessors $1,000 per year until work was commenced. Under the terms of this agreement, appellant had the option to do one or the other, according to his own will. Upon the execution of the leases he paid the substantial consideration of $1,000, which undoubtedly is fully sufficient to support all terms of the lease, including the option to drill or pay, and it is undisputed that appellant has either paid or tendered payment of all sums provided by the leases for delay in drilling or for rentals of the surface. Ap-

pellee cites a number of authorities, including 1 Thornton on the Law of Oil and Gas, p. 274, § 167, to the effect that a lessee cannot, prolong the life of a lease by the mere payment of rental. This may be and doubtless is true as a general rule in cases where the cash consideration paid is merely nominal, and where it is evident by the terms of the lease as a whole that the real consideration is for development. It is also true that in cases such as we have before us that a lessee cannot by the payment of the optional rentals extend the lease beyond the terms fixed for its final determination, but we have found no case where, as here, a substantial consideration not all rentals, has been paid, and where, as here, there has been a specific promise on the part of the lessee to either drill or pay rentals, and where, as here, the lease provides no forfeiture for a failure to drill a well within a given period, that the court will declare a forfeiture of the lease for a failure to drill a well before the end of the term. McAfee v. Grubb, 164 S. W. 926; Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; Lone Star Gas Co. v. McCullough, 220 S. W. 1114; Lowther v. Guffey, 53 W. Va. 88, 43 S. E. 101; Poe v. Ulrey, 233 Ill. 56, 84 N. E. 46; Chandler v. Hart, 161 Cal. 405, 119 Pac. 516, Ann. Cas. 1913B, 1094; Monfort v. Lanyon Zinc Co., 67 Kan. 310, 72 Pac. 784; 2 Thornton on the Law of Oil and Gas, p. 1199, § 897.

In the section from Thornton, supra, that authority says:

"If a lease provide that it shall be null and void, and all rights under it shall determine if a well be not drilled within a time stated, or unless the lessee pay a stipulated rental for delay in drilling a well or until one be completed, such lessee may continue the lease in force during the term for which it was given by either paying the rental to the lessor or paying it in bank to his credit, if the lease provide for the latter way of paying the rental."

[4] We think the quotation from Thornton fairly expresses the rule of law applicable to oil and gas leases of the character of those before us. By the very terms of the oil leases it is for the lessees or assigns to determine when a well shall be drilled. If for any reason deemed sufficient to them they desire to delay drilling and in lieu thereof pay the specified rents, they may do so and thus continue the leases in force for the specified term.

There was evidence to the effect that at the time of the execution of the surface leases there was situated on the lots in controversy a single building of the rental value of $40 per month, and that as a part of the negotiations which resulted in the surface leases it was agreed that appellant should secure two other lots, divide and make two houses out of the old house, and move the two houses thus made upon the lots secured, appellant to be recompensed therefor out of rents. This part of the understanding and agreement was complied with by appellant, and he was thereafter duly recompensed from rents as agreed upon. Appellant testified that thereupon contracts for buildings on the lots in controversy, aggregating $35,000, were entered into by him, and that J. D. Porter was present at the time such contracts for improvements were made and made no objection thereto. We conclude, therefore, that under the evidence as detailed the court was not authorized to declare a forfeiture of the oil leases in question because of the failure to drill, nor to take from the jury the issue of whether there had been an absolute abandonment of all purpose upon appellant's part to do so.

It is insisted, however, that performance of the contract has been rendered impossible by the enactment of an ordinance of the city of Ranger. This ordinance was not enacted until in June of the year following the execution of the leases in controversy. It reads, omitting formal parts, as follows:

"An ordinance regulating the drilling maintenance and control of oil wells in the city of Ranger and wastage therefrom.

"Section 1. That no derrick for the drilling or digging of any oil well in the city of Ranger shall hereafter be erected, nor any boiler drilling or other machinery emplaced for such purposes in the city of Ranger, except under permit granted by the city building inspector and upon compliance with the further provisions of this ordinance.

"Sec. 2. Before any such derrick, boiler, engine, drilling rig, or other machinery is placed for such purpose, the owner, lessee or contractor or his or their agent, shall file with the building inspector an application showing the name of the owner of the land upon which it is intended to place such well-drilling equipment or any part thereof and of the land upon which said well is intended to be drilled, sunk or dug; the name and address of the lessee; the name and address of the contractor or other person who shall do the work of drilling, sinking or digging of said well; the time of beginning said work and such other data as the building inspector may demand relative thereto; said application shall be accompanied by a clear and succinct statement of the means, methods, and manner in which it is intended to drill, sink or dig said well which must include the method used to preclude the possibility of such wells or well becoming a menace to the public safety from fire or injury to persons or property of the city of Ranger, its inhabitants or others. If such application is satisfactory the city building inspector shall so notify the applicant who shall, within ten days thereafter file with the city secretary a bond with a legally authorized bond surety corporation as security payable to the city of Ranger, in the sum of five thousand dollars, and conditioned that said owner, lessee, and contractor shall drill, sink or dig such well in such manner as not to injure, deface, or destroy property adjacent, contiguous, or near said well, and in such manner as to in no wise create, or

seriously increase the danger of such property from fire,· or to injuriously affect the health, safety or comfort of the inhabitants of the city of Ranger; and in such manner that no wastage, leakage or seipage shall be permitted to escape therefrom and flow, leak seip, or drain into or upon any street, sidewalk pavement, lawn, park, or other property of the city of Ranger, or of adjacent or contiguous property, slough, stream or gully in said city, and to hold the city of Ranger harmless from any loss or damage whatsoever arising therefrom.

"Sec. 3. No person, owning leasing or controlling an oil well now or hereafter· existing in the city of Ranger, shall permit or allow any oil or other inflammable product of or from said well, or any by-product therefrom, to drain, seip or be in any manner discharged into or upon any street, sidewalk, pavement, lawn, park, slough, stream, gully, or branch within said city, or into or upon any adjacent or contiguous property.

"Sec. 4. Any person guilty of breaking any provision of this ordinance shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than five dollars nor more than two hundred dollars and each day's continuance of such acts shall constitute a separate offense."

A concrete statement of the law relating to the subject as deduced from authorities cited in notes, is thus given in 13 Corpus Juris, p. 646, § 720:

"Performance of a contract cannot be compelled where it would involve a violation of law. Hence a contract is discharged where after it has been entered into the performance is made unlawful. The exception does not apply, however, where the impossibility created by the law is only temporary, where the change merely makes performance more burdensome, or where the law in question is that of a foreign country and not a domestic law. The inability to control the actions of a third party whose co-operation is needed for a performance of the undertaking is not considered a legal impossibility avoiding the obligation."

In 6 Ruling Case Law, p. 1000, § 366, the law is stated as follows:

"One of the conditions implied in a contract is that the promisor shall not be compelled to perform if performance is rendered impossible by an act of the law. The inference is that the parties did not contemplate that damages should be paid for nonperformance in the event that performance was subsequently prohibited by law. The decisions of practically all jurisdictions are to the effect that where a contract, legal in its inception, becomes illegal by subsequent statutory enactment, the contract is wholly terminated as soon as the statute takes effect, even though the time specified for its performance has not yet fully expired, and no action can be maintained by either party for failure to perform the obligations of the contract after the illegality has attached. But these authorities hold merely that it is a general rule of law that where a contract is lawful when made, and a subsequent enactment renders performance of it unlawful, neither party shall be prejudiced, and the contract is at an end. They do not hold that one party may take the property of another under a promise to pay for it, and still hold it, and not pay for it, if, by reason of an enactment of law after the contract is made, such party is prohibited from making payment in the article he contracted to pay with. The party obtaining the property in this way should be required to restore it or to pay for it upon equitable terms. Moreover, a distinction must be made between a law which renders performance of a contract unlawful altogether, and one which suspends the performance without condemning the subject of the contract. As to the former the rule is that neither party shall be prejudiced, but the contract shall be considered as at an end and its performance forbidden, and all the parties released from their obligations. In the latter case, however, where a temporary restraint is put upon the performance, the contract must be considered as still in force, though dormant, and where the restraint is removed the old obligations revive, binding the parties to the complete performance of the contract previously made. The latter rule is especially applicable to cases arising under embargo laws."

[5] We think the quotations made fairly illustrate the law on the subject, and that when applied to the ordinance in question we must hold that the court was not authorized to declare a forfeiture and an end of the contract of the parties to this litigation on the ground of the enactment of the ordinance quoted. It is true that appellees offered the testimony of the city building inspector of the city of Ranger to the effect that because of the development in and about the lots in controversy he would not upon application grant a permit for the drilling of an oil well. But no application for a permit has ever been made by appellant. It is apparent from a reading of the ordinance that there is no absolute prohibition for drilling an oil well in the city of Ranger. The ordinance merely regulates the subject. It contemplates that the drilling may be in such manner and under such conditions as to receive the approval of the city building inspector. From the ordinance it must be implied that the city inspector would not unreasonably and arbitrarily refuse to grant a permit under conditions which would clearly and certainly avoid the dangers intended to be guarded against by the ordinance. Nor do we think it can be said, as a matter of law, that the ordinance in question will necessarily continue for the full term of appellant's oil leases, or that the building inspector who testified will continue in office, or that his successor would view the condition with a like effect. It is to be noted further that the ordinance in its operation does not inhibit the performance of the oil lease contracts. Therein appellant agreed that he would pay $1,000 per year to J. D. Porter and wife and the like sum to J. D. Porter as guardian for the full period

of 10 years unless he did drill a well, and we know of no reason why appellant may not, notwithstanding the ordinance invoked, exercise the privilege given to him to delay the drilling of a well within the term of his leases until circumstances are more favorable to him.

We conclude that the judgment below should be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

### On Motion for Rehearing.

Appellees present a motion for rehearing, in which, among other things, they insist that we erred in not passing upon the question of what effect should be given to the fact that the surface lease, executed by J. D. Porter as guardian for the minors' interests in the lots in controversy, had been executed without a formal order of the probate court so authorizing. In answer to this contention, and as an explanation of our failure to notice the fact, it will be stated that the leases of the mineral interests of the minors had been made pursuant to an order of the court as provided by articles 4152a and 4152b, V. S. Tex. Civ. Stats. And that article 4136 of the same statutes provides that—

"The guardian may rent the improved property of the ward, other than such property as is named in article 4134 without an order of the court authorizing him to do so, and either at public or private . renting."

Article 4134 referred to in the quotation relates alone to "a farm, plantation, manufactory or business belonging to the estate," and not to improved property such as was the property in question, and as is provided for in article 4136.

In view of these statutes it was not supposed that appellees placed any reliance upon the contention now made, particularly in view of the fact that by no counter proposition, cross-assignment, or argument in appellees' briefs were we called upon to rule on the question; on the contrary, appellees in their briefs stated that—

"The controlling issues presented by the pleading and evidence were two: First, had the appellant at the date of the institution of appellees' suit abandoned the intention to drill for oil and gas on the leased premises? Second, had the drilling of the well upon the leased premises become unlawful because in violation of the city ordinance of the city of Ranger?"

[6] But nevertheless we feel no hesitation in now saying that a consideration of the several articles of the statutes referred to, and of the undisputed fact that the surface leases relate to improved property, leads to the conclusion that the guardian's lease of the surface of the minors' interests is not void because of a failure to procure an order from the probate court therefor.

There is also the further contention that we erred in concluding that the evidence did not establish beyond question appellants' intent to abandon the oil leases, but on this branch of the case we find no sufficient reason for altering the views originally expressed.

The motion for rehearing is accordingly overruled.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes